PITTSBURGH TUBE COMPANY v TRI-BEND, INC

Docket No. 114620. Submitted June 18, 1990, at Grand Rapids. Decided October 1, 1990.

Tri-Bend, Inc., owed plaintiff, Pittsburgh Tube Company, almost $40,000 on April 30, 1985, for material sold on an open account. Third-party plaintiffs, James Geisman, Daniel May and Charles Wilson, Tri-Bend's sole shareholders, sold Tri-Bend in May, 1985, to Fernand St. Germain, Donald Blakely and Shannon Rowe. The purchase agreement recited a purchase price of $33,900 with $3,900 to be paid within six months at ten percent interest and the remainder to be paid within a five-year period, also at ten percent interest. The agreement stated, "these will be personal and Tri-Bend notes." Tri-Bend, through one of the new shareholders acting as president, issued promissory notes of $10,000 to each of the third-party plaintiffs. As a means of securing these notes, Tri-Bend entered into a security agreement which granted each third-party plaintiff a security interest in Tri-Bend's assets. A financing statement was filed with the Secretary of State. The three new shareholders signed a guarantee agreement which personally guaranteed the entire amount of Tri-Bend's debt to the third-party plaintiffs. Plaintiff obtained a $37,339.30 consent judgment against Tri-Bend and a writ of execution in the Jackson Circuit Court. Tri-Bend's assets were sold at a foreclosure sale conducted by a bank which held a first-priority security interest in Tri-Bend's assets. The foreclosure sale completely liquidated the obligation to the bank and the excess proceeds of $9,084.47 were paid to plaintiff pursuant to the writ of execution. The third-party plaintiffs intervened, claiming that as second-priority secured creditors they had priority over judgment creditors and were therefore entitled to the excess proceeds. The trial court, Alexander C. Perlos, J., held that the third-party plaintiffs held a valid

REFERENCES

Am Jur 2d, Appeal and Error § 545; Contracts §§ 94, 96; Corporations §§ 1992, 1995, 1996, 2009; Secured Transactions § 280.

See the Index to Annotations under Appeal and Error; Consideration; Corporations; Secured Transactions; Ultra Vires.

security interest and ordered the excess proceeds paid over to them. Plaintiff appealed.

The Court of Appeals *held:*

1. The third-party plaintiffs gave value when they entered into the agreement extending credit to the three individuals who purchased the stock of Tri-Bend. Uniform Commercial Code § 9-203(1)(b) was satisfied and the agreement was enforceable against plaintiff.

2. Tri-Bend's creation of the security interest was not an ultra vires act and was therefore proper.

3. The transaction between third-party plaintiffs and the new shareholders was a purchase of stock and not a stock redemption, therefore, the issue of Tri-Bend's solvency is completely irrelevant.

4. Plaintiff's characterization of the transaction as an illegal dividend distribution is without merit.

5. Plaintiff's final issue was not preserved for appeal.

Affirmed.

1. SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE.

Section 9-203(1) of the Uniform Commercial Code does not require that the debtor receive anything in order for a security agreement to attach; it only requires that the secured party give value (MCL 440.9203[1]; MSA 19.9203[1]).

2. SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE.

The Uniform Commercial Code provides that a person gives value for rights to collateral if the person acquires them in return for a binding commitment to extend credit or for the extension of immediately available credit or in return for any consideration sufficient to support a simple contract (MCL 440.1201[44]; MSA 19.1201[44]).

3. CONTRACTS — CONSIDERATION.

It is a well-established principle of contract law that the consideration for a promise may inure to one other than the promisor or may lie in a detriment to the promisee.

4. CORPORATIONS — PROPERTY.

A Michigan corporation may, in the furtherance of corporate purposes and subject to limitations by the articles of incorporation, sell, convey, lease, exchange, transfer or otherwise dispose of, or mortgage or pledge, or create a security interest in, any of its property, or an interest therein, wherever situated (MCL 450.1261[g]; MSA 21.200[261][g]).

5. APPEAL — PRESERVING QUESTION.
  Issues raised for the first time on appeal need not be addressed by the Court of Appeals; review may be granted if failure to consider an issue would result in manifest injustice or is necessary to a proper determination of the case.

*Muller, Muller, Richmond, Harms, Myers & Sgroi, P.C.* (by *Edward A. Mahl*), for Pittsburgh Tube Company.

*Marcoux, Allen, Abbott & McQuillan, P.C.* (by *Raymond E. McQuillan* and *Marty Hansen Krupa*), for James Geisman, Daniel May, and Charles Wilson.

Before: HOOD, P.J., and HOLBROOK, JR., and NEFF, JJ.

HOLBROOK, JR., J. Plaintiff was ordered to pay third-party plaintiffs $9,084.47 after the Jackson Circuit Court found that the third-party plaintiffs possessed a perfected security interest in the assets of defendant Tri-Bend, Inc. Plaintiff appeals as of right, claiming that the third-party plaintiffs did not have a valid security interest under Article 9 of the Uniform Commercial Code and that the conveyance of the security interest was invalid under the Business Corporation Act, MCL 450.1101 *et seq.*; MSA 21.200(101) *et seq.*, and the Uniform Fraudulent Conveyance Act, MCL 566.11 *et seq.*; MSA 26.881 *et seq.* We affirm.

The essential facts are undisputed. Plaintiff sold material on an open account to defendant Tri-Bend, Inc., between August and December of 1984. By April 30, 1985, Tri-Bend owed plaintiff almost $40,000. Third-party plaintiffs, Tri-Bend's sole shareholders, sold the business in May, 1985, to Fernand St. Germain, Donald D. Blakely, and Shannon Rowe. The purchase agreement recited a

purchase price of $33,900, with $3,900 to be paid within six months at ten percent interest and the remaining $30,000 to be paid within a five-year period, also at ten percent interest. The agreement stated: "These will be personal and Tri-Bend notes."

Attendant to the purchase transaction, Tri-Bend, through one of the new shareholders acting as president, issued promissory notes in the amount of $10,000 to each of the three third-party plaintiffs. As a means of securing these notes, Tri-Bend entered into a security agreement which granted each third-party plaintiff a security interest in Tri-Bend's assets. A financing statement was duly filed with the Secretary of State's UCC unit on July 17, 1985. The three new shareholders signed a guarantee agreement which personally guaranteed the entire amount of Tri-Bend's debt to third-party plaintiffs.

Plaintiff obtained a $37,339.30 consent judgment against Tri-Bend in April, 1986, and obtained a writ of execution in April, 1987. Tri-Bend's assets were sold in a July, 1987, foreclosure sale conducted by Michigan National Bank—Midwest, which apparently held a first-priority security interest in Tri-Bend's assets. Although the record does not reveal the circumstances through which the bank obtained its security interest, it was apparently acquired prior to the May, 1985, sale.

The foreclosure sale completely liquidated Tri-Bend's obligations to the bank and realized excess proceeds of $9,084.47. The excess was paid over to plaintiff pursuant to the writ of execution. Third-party plaintiffs intervened, claiming that as second-priority secured creditors they had priority over judgment creditors and were therefore entitled to the excess proceeds. The trial court held that third-party plaintiffs held a valid Article 9

security interest and ordered the excess proceeds paid over to them.

I

Plaintiff raises five issues on appeal. First, plaintiff questions whether the security interest given by Tri-Bend to its previous shareholders, third-party plaintiffs, was valid pursuant to the UCC since no value was given.

Section 9-203(1) of the UCC, MCL 440.9203(1); MSA 19.9203(1), provides that a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) Value has been given; and

(c) The debtor has rights in the collateral.

While plaintiff freely concedes that (a) and (c) are satisfied, it argues that no value was given since Tri-Bend received nothing as consideration for the pledge of its assets and that the agreement is therefore unenforceable. We disagree.

By its plain language, UCC 9-203(1) does not require that the debtor receive anything in order for the security agreement to attach; it only requires that the secured party give value. See generally, White and Summers, Uniform Commercial Code, § 23-4, pp 791-793. UCC 1-201(44), MCL 440.1201(44); MSA 19.1201(44), provides that a

person gives value for rights to collateral if the person acquires them:

(a) In return for a binding commitment to extend credit or for the extension of immediately available credit. . . .

* * *

(d) Generally, in return for any consideration sufficient to support a simple contract.

Third-party plaintiffs extended the purchasers $3,900 credit for six months and $30,000 credit for five years at ten percent simple interest per annum. The security agreement memorializes that in return for this extension of credit third-party plaintiffs were given rights in Tri-Bend's assets. It is clear value was given pursuant to subsection (a).

Value was also given pursuant to subsection (d) as there was consideration sufficient to support a simple contract. In *Highland Park v Grant-Mackenzie Co,* 366 Mich 430, 446-447; 115 NW2d 270 (1962), our Supreme Court stated: "That the consideration for a promise may inure to one other than the promisor or may lie in a detriment to the promisee is a well-established principle of contract law." Tri-Bend was the promisor in the security agreement and third-party plaintiffs were the promisees. When they sold their shares of stock on credit, third-party plaintiffs clearly suffered a detriment. It was not necessary for the consideration to inure to Tri-Bend in order for there to be sufficient consideration to support the contract between Tri-Bend and third-party plaintiffs.

We conclude, therefore, that third-party plaintiffs gave value when they entered into the agreement extending credit to the three individuals who purchased the stock in Tri-Bend. Thus, UCC 9-203(1)(b) was satisfied and the agreement was enforceable against plaintiff.

## II

Plaintiff next argues that Tri-Bend's pledge of its assets should be considered an ultra vires act and thus invalid.

MCL 450.1261(g); MSA 21.200(261)(g) provided at the time of such pledge that a Michigan corporation has the power, in the furtherance of corporate purposes, to "[s]ell, convey, lease, exchange, transfer or otherwise dispose of, or mortgage or pledge, or create a security interest in, any of its property, or an interest therein, wherever situated," subject to limitations provided by the articles of incorporation.

Plaintiff at bar does not allege that Tri-Bend's articles of incorporation imposed any limitations on the corporation's powers to create security interests in its property. Under the clear meaning of the statutory language and absent limitations in the articles of incorporation, the creation of the security interest was not an ultra vires act and was therefore proper.

## III

Third, plaintiff argues that while, in form, the transaction between third-party plaintiffs and the new shareholders was the purchase of stock, in substance, it was a stock redemption. Plaintiff argues that since Tri-Bend was insolvent when the transaction occurred, the transaction was void and should not be enforced.

MCL 450.1365(2)(b); MSA 21.200(365)(2)(b) provided at the time of the transaction that a corporation shall not purchase or redeem its shares when "the corporation is insolvent or when the purchase or redemption would render the corporation insolvent." For purposes of the Business Corporation

Act, the term "insolvent" was defined at the time of the transaction as "being unable to pay debts as they become due in the usual course of a debtor's business." MCL 450.1107(3); MSA 21.200(107)(3).

While there is no dispute that at the time of the transaction Tri-Bend was in considerable arrears on its account with plaintiff and thus insolvent as that term is defined for purposes of the Business Corporation Act, there is no merit to plaintiff's claim that the disputed transaction was essentially a stock redemption scheme.

Although the purchase agreement, with the corporation issuing a promissory note and pledging its assets as collateral and the new shareholders each guaranteeing personally the corporation's debt, is somewhat ambiguous as to who was actually purchasing the stock, looking beyond its form in determining the substance of the transaction, as plaintiff urges, we conclude that the transaction was indeed a purchase of the stock by the new shareholders. Since the new shareholders personally guaranteed Tri-Bend's debt to third-party plaintiffs, the purchasers, and not the corporation, were ultimately responsible for the purchase price. The transaction was a purchase and not a redemption and the issue of Tri-Bend's solvency is completely irrelevant.

IV

Plaintiff next proposes that this Court view the transaction as a dividend to former shareholders. Treated as such, the dividend would be illegal because it was made while the corporation was insolvent or when the corporation would be rendered insolvent by the dividend.

A corporation may not declare and pay dividends, or make other distributions on its outstand-

ing shares, when the corporation is insolvent or would be made insolvent by the dividend or distribution. MCL 450.1351; MSA 21.200(351), in effect at the time of the transaction. This Court has defined a dividend as a "distribution of the net income of a corporation to the shareholders of that corporation" whether or not it is termed or even considered a dividend by its directors or shareholders. *Allied Supermarkets, Inc v Grocer's Dairy Co,* 45 Mich App 310, 314; 206 NW2d 490 (1973), aff'd 391 Mich 729; 219 NW2d 55 (1974).

Plaintiff's characterization of the transaction as an illegal dividend distribution is without merit. When the transaction was completed, third-party plaintiffs no longer held stock in the corporation and the corporation, through a promissory note personally guaranteed by the new shareholders, stood indebted to them. The transaction was nothing more and nothing less than a purchase and sale of Tri-Bend's stock.

V

Lastly, plaintiff argues that the note and security interest given by Tri-Bend was a fraudulent conveyance because equivalent value was not received in exchange. Plaintiff alleges that the transaction in which third-party plaintiffs sold their stock to the three new shareholders, and Tri-Bend pledged its assets as security, was a leveraged buy out. Plaintiff urges this Court to follow the rationale of *United States v Tabor Court Realty Corp,* 803 F2d 1288 (CA 3, 1986), cert den sub nom *McClellan Realty Co v United States,* 483 US 1005; 107 S Ct 3229; 97 L Ed 2d 735 (1987), and hold that such a transaction is void under the Uniform Fraudulent Conveyance Act.

A careful review of the record below reveals that

this issue was neither raised nor addressed there. Issues first raised on appeal need not be addressed by this Court. *Ledbetter v Brown City Savings Bank,* 141 Mich App 692, 701-702; 368 NW2d 257 (1985). Review may be granted if failure to consider an issue would result in manifest injustice or is necessary to a proper determination of the case. *Richards v Pierce,* 162 Mich App 308, 316; 412 NW2d 725 (1987).

There is no evidence in this case to suggest that third-party plaintiffs acted in anything other than good faith in conveying their Tri-Bend stock to the new shareholders. Under the circumstances, we will not disregard our issue preservation requirements.

Affirmed.