HERALD COMPANY, INC v CITY OF KALAMAZOO

Docket No. 197137. Submitted November 5, 1997, at Grand Rapids.
    Decided April 21, 1998, at 9:10 A.M.

The Herald Company, Inc., filed a complaint in the Kalamazoo Circuit
    Court against the city of Kalamazoo, seeking the disclosure of doc-
    uments that were compiled during an internal investigation into the
    theft of narcotics from an evidence room located within the
    Kalamazoo Department of Public Safety. The court, Richard R.
    Lamb, J., found that the state Freedom of Information Act (FOIA),
    MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, required the disclosure of
    certain documents. The court also allowed the city to redact cer-
    tain documents and not disclose others. Herald appealed.

The Court of Appeals *held*:

The orders of the trial court must be affirmed, but the matter
must be remanded for consideration whether the documents with-
held from disclosure under the law-enforcement-proceedings
exception to disclosure of the FOIA should now be made available in
light of the passage of time and changed circumstances.

1. The trial court properly recognized that the exemptions from
disclosure for law-enforcement-related matters by the state FOIA are
less expansive than similar provisions in the federal FOIA, 5 USC
552(b)(7)(A). The court properly applied the correct legal standard
with regard to the law-enforcement-proceedings or investigative-
techniques exemptions provided in MCL 15.243(1)(b); MSA
4.1801(13)(1)(b).

2. A three-step procedure is to be used by trial courts in evaluat-
ing the rejection of an FOIA request. First, the court should receive a
complete particularized justification as set forth in the six rules
stated in *Evening News Ass'n v City of Troy*, 417 Mich 481, 503
(1983), or, second, the court should conduct a hearing in camera
based on review de novo to determine whether complete particu-
larized justification pursuant to the six rules exists, or, third, the
court can consider allowing the plaintiff's counsel to have access to
the contested documents in camera under special agreement when-
ever possible.

3. The court followed the first two steps in determining that an
ongoing investigation was underway. A court need not use all three

of the alternative steps before concluding that a request is properly denied. The court's determination must be affirmed, but the matter must be remanded for the limited purpose of a factual determination regarding the current existence of any open, ongoing criminal investigation.

4. There is no basis in the state FOIA or the federal FOIA for the proposition that an open investigation into a crime can be construed to continue until the expiration of the applicable period of limitation for criminal prosecution of the crime without active, ongoing law enforcement investigation of the crime.

5. The court did not apply an incorrect legal standard in determining that certain documents were exempt from disclosure under the FOIA exemption provided by MCL 15.243(1)(b)(iii); MSA 4.1801(13)(b)(iii) because their disclosure would result in an unwarranted invasion of privacy.

6. Error requiring reversal did not occur with regard to the use of the procedural safeguards of the FOIA.

Affirmed and remanded.

1. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS — LAW ENFORCE-
MENT MATTERS.

The exemptions from disclosure of records regarding law-enforcement-related matters provided by the Michigan Freedom of Information Act are less expansive than those of the federal Freedom of Information Act (5 USC 552[b][7][A]; MCL 15.243[1][b]; MSA 4.1801[13][1][b]).

2. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS — JUDICIAL
REVIEW.

A three-step procedure is to be used by trial courts in evaluating a rejection of a request for documents under the Freedom of Information Act's exemption from disclosure regarding law-enforcement-related matters; application of each of the three steps is not mandated and a court may follow one or more of the steps where appropriate; the three steps are: the court should receive a complete particularized justification as set forth in the following six rules, or conduct an in camera hearing based on review de novo to determine whether complete particularized justification pursuant to the six rules exists, or consider allowing the plaintiff's counsel access to the contested documents in camera under special agreement whenever possible; the six rules are: the burden of proof is on the party claiming exemption from disclosure, exemptions must be interpreted narrowly, the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying, detailed affidavits

describing the matters withheld must be supplied by the agency, justification of the exemption must be more than conclusory and indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings, and a mere showing of a direct relationship between records sought in an investigation is inadequate (MCL 15.243[1][b]; MSA 4.1801[13][1][b]).

. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS — LAW ENFORCEMENT DOCUMENTS — OPEN INVESTIGATIONS.

Active, ongoing law enforcement investigation of a crime is required in order to consider an investigation open for purposes of applying the Freedom of Information Act's exemption from disclosure of law-enforcement-related documents; an investigation is not considered to remain open merely because the period of limitation applicable to the crime has not expired (MCL 15.243[1][b]; MSA 4.1801[13][1][b]).

*Lewis & Allen, P.C.* (by *Bruce W. Martin*), for the plaintiff.

*Robert H. Cinabro*, City Attorney, and *A. Lee Kirk*, Deputy City Attorney, for the defendant.

Before: MARKEY, P.J., and KELLY and WHITBECK, JJ.

WHITBECK, J.

I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff the Herald Company, Inc. (Herald) filed a complaint against the city of Kalamazoo (the city) under the state Freedom of Information act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, seeking disclosure of documents that were compiled during an internal investigation into the theft of narcotics from an evidence room located within the Kalamazoo Department of Public Safety. The trial court, after reviewing the documents in camera, ordered, in accordance with an earlier decision and opinion in open court, the city to release certain documents to

Herald. The trial court also allowed the city to redact certain documents. Finally, the trial court provided that the city would not have to release certain other documents. Herald appeals as of right, challenging the trial court's decision with regard to some of the withheld documents. We affirm the decision of the trial court, but remand for reconsideration of whether certain documents that were withheld from disclosure under the "law enforcement proceedings" exemption of the FOIA should now be made available to Herald in light of the passage of time and changed circumstances since the trial court's decision.

Herald discovered in 1993 that a large quantity of narcotics was apparently stolen from the evidence room at the Kalamazoo Department of Public Safety. Herald also learned that the city conducted an investigation into the matter and that a multicounty grand jury heard evidence related to the apparent theft, but that the grand jury did not issue any indictments in connection with this matter. In July 1995, Herald submitted an FOIA request to the city for documents related to the disappearance of narcotics from the evidence room. While the city disclosed some of the documents, it claimed that others were exempt from disclosure under the FOIA. Herald filed this suit to seek release of the withheld documents.

## II. THE LAW ENFORCEMENT EXEMPTION OF THE FOIA

### A. THE "COULD" VERSUS "WOULD" DICHOTOMY

Herald argues that the trial court applied a flawed legal standard in determining whether certain documents were exempt from disclosure because their release would interfere with an ongoing investigation into the apparent theft of narcotics from the evidence

room or because their release would reveal law enforcement techniques. Herald does not contest the trial court's factual findings regarding this matter. We review questions of law de novo. *Wayne Co v Britton Trust*, 454 Mich 608, 614; 563 NW2d 674 (1997).

MCL 15.243(1)(b); MSA 4.1801(13)(1)(b) provides in pertinent part:

> A public body may exempt from disclosure as a public record under this act:
>
>     \*    \*    \*
>
> (b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record *would do* any of the following:
>
> (i) Interfere with law enforcement proceedings.
>
>     \*    \*    \*
>
> (v) Disclose law enforcement investigative techniques or procedures. [Emphasis added.]

In contrast, the federal FOIA allows exemption of documents that "could" reasonably be expected to interfere with law enforcement proceedings. See 5 USC 552(b)(7)(A). The trial court properly recognized in its July 2, 1996, oral opinion that the exemptions provided for law-enforcement-related matters by the Michigan FOIA are less expansive than similar provisions of the federal FOIA:

> [T]his Court's conclusion is that Michigan, by using the word, Would, has imposed a more restrictive standard on the exemption continued [sic] in MCL 15.243.
>
> And, that's the standard I will follow. And, the—the difference between the two words is significant.

However, Herald argues that the trial court later failed to follow the more restrictive Michigan standard when it excluded a particular item on the basis of a determination that its disclosure merely "may" have interfered with a law enforcement investigation:

> I'll insert parenthetically here, for any reviewing Court, with reference to the open investigation claim one item taken by itself might not appear to add or subtract much to whatever investigation is going on but it's been my experience that investigations are like puzzles, 'til you get all the pieces put together you do not know how they're all going to fit. No puzzle is complete without all the pieces. And, if you don't have the cover to the puzzle, and you find one piece of the puzzle somewhere it may not make much sense to you. But, if you have the cover and you know what the puzzle's all about a little piece of information may help you, and may thwart the investigation.

First, the trial court appropriately reviewed the documents in accordance with *Evening News Ass'n v City of Troy*, 417 Mich 481; 339 NW2d 421 (1983). *Evening News* requires the trial court to review each section of the public record and determine whether, for the particular reasons given by the public body, disclosure of the section would interfere with law enforcement proceedings. *Id.* at 503-505. Here, the trial court properly reviewed in camera each document that the city claimed fell under the law enforcement exemptions at issue to determine whether the city's asserted basis for withholding the document supported its exemption from disclosure.

Herald cites no instance where the trial court used words such as "could" or "may" in analyzing whether a particular document was exempt from disclosure under the law enforcement exemptions at issue. The

trial court used the term "may" in discussing how one piece of information may not seem relevant to an ongoing investigation but nevertheless could actually be relevant. In context, the use of the word "may" in this portion of the trial court's decision supports a conclusion that the trial court first determined whether a particular piece of information was at all relevant to the ongoing investigation. If it were, the trial court then applied the correct standard required by the Michigan FOIA to determine whether the document was exempt from disclosure because it "would" interfere with law enforcement proceedings. Accordingly, the trial court applied the correct legal standard with regard to the law-enforcement-proceedings or investigative-techniques exemptions.

### B. THE EXISTENCE OF AN OPEN INVESTIGATION

As we note above, the discovery of the disappearance of narcotics from the evidence room apparently occurred sometime in 1993. Herald made its initial FOIA request in this matter on July 3, 1995. Eventually, the city provided the trial court with 110 items that it claimed were exempt because they might be used in future investigations. The trial court ordered certain of these items to be released, but upheld the city's claim of exemption with regard to the great bulk of these items.

Despite the fact that the grand jury that investigated, in pertinent part, the disappearance of narcotics from the evidence room of the Kalamazoo Department of Public Safety has adjourned, the city contends that Herald is attempting to persuade this Court to order the release of documents "which [Herald] knows or should know are at the core of an open,

ongoing criminal investigation." Apparently in support of this assertion, the city notes that the period of limitation for any theft of controlled substances has not run and that there are several potential federal and state crimes for which the period of limitation has not yet run. See MCL 767.24; MSA 28.964. See also 18 USC 3282.[1]

This position stretches the law enforcement exemption of the FOIA beyond any permissible limits. The Michigan Supreme Court most fully construed this exemption in *Evening News, supra.* That case involved FOIA requests by the Evening News Association to the city of Troy relating to the identifies of two officers involved in a killing that occurred in Troy in 1979 and incident reports related to that killing. *Evening News, supra* at 487. The trial court upheld the denial of disclosure, and this Court affirmed. *Id.* at 491. The Michigan Supreme Court reversed, holding, inter alia, that the trial court erred in its "generic determination" that the defendants, the city of Troy and its police chief, had met their statutory burden to sustain their claim of exemption where it was only alleged in conclusory fashion that disclosure would " '[i]nterfere with law enforcement proceedings' " or " 'would indeed have a chilling effect on the investigation.' " *Id.* at 517. The Court outlined a three-step procedure to be followed by Michigan trial courts in evaluating the rejection of an FOIA request:

---

[1] During oral argument, the city's counsel asserted that the city had received indications of a continuing interest in this matter from other governmental investigatory agencies. Because this assertion is unsupported by the record, we do not consider it. See, e.g., *Hawkins v Murphy*, 222 Mich App 664, 670; 565 NW2d 674 (1997) (review is limited to the record on appeal).

1. The court should receive a complete particularized justification as set forth in the six rules above (Part IC);[2] or

2. the court should conduct a hearing *in camera* based on *de novo* review to determine whether complete particularized justification pursuant to the six rules exists; or

3. the court can consider "allowing plaintiff's counsel to have access to the contested documents *in camera* under special agreement 'whenever possible.' " [*Evening News, supra* at 516 (citations omitted).]

Here, the able trial court, carefully and with extensive deliberation, followed the first two of these procedural options:[3] consistent with the first option, he required the city to file a particularized justification

---

[2] The six rules are:

1. The burden of proof is on the party claiming exemption from disclosure. MCL 15.240(1); MSA 4.1801(10)(1).

2. Exemptions must be interpreted narrowly. *Vaughn v Rosen,* 157 US App DC 340, 343; 484 F2d 820 (1973).

3. "[T]he public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." MCL 15.244(1); MSA 4.1801(14)(1); *Vaughn v Rosen,* 157 US App DC 345.

4. "[D]etailed affidavits describing the matters withheld" must be supplied by the agency. *Ray v Turner,* 190 US App DC 290, 317; 587 F2d 1187 (1978).

5. Justification of exemption must be more than "conclusory," *i.e.,* simple repetition of statutory language. A bill of particulars is in order. Justification must indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings. *Campbell v Dep't of Health & Human Services,* 221 US App DC 1, 4-6, 10-11; 682 F2d 256 (1982); *Vaughn v Rosen,* 157 US App DC 347.

6. The mere showing of a direct relationship between records sought and an investigation is inadequate. *Campbell v Dep't of Health & Human Services,* 221 US App DC 8-9. [*Evening News, supra* at 503.]

[3] *Evening News, supra,* indicated by the use of the conjunctive "or" that a trial court need not use all three of these alternatives in every case before concluding that an FOIA request is properly denied. See *Evening News, supra* at 516.

consisting of an index of allegedly exempt documents and a supporting affidavit and, consistent with the second option, it also undertook an in camera review of the disputed documents. On the basis of this review, the trial court found in its July 2, 1996, oral opinion that an ongoing investigation was underway:

> And, I'm back to the original point that I'm satisfied from the affidavit of Inspector Grace, and what I've seen in all these documents I'm making reference to, that there still is an open investigation which is a [sic] objectively good faith investigation to determine, if possible, the method, and who, and when, and where, and how all these items disappeared.

While we see no basis whatever to question the accuracy or legal sufficiency of this finding, it was made at the latest on July 3, 1996. It is now over a year and a half later, over 2½ years from the date of Herald's initial FOIA request and over four years since the discovery of the apparent theft of narcotics from the evidence room.[4] The city acknowledges that the

---

[4] In *Evening News, supra* at 507, the Michigan Supreme Court gave short shrift of the trial court's conclusory finding that revealing the names of witnesses " 'could conceivably result in conflicting statements and further hamper the investigation; also piecemeal, partial statements in the press could, conceivably, inflame the public further than it has already been inflamed.' " The Court observed:

> The "could conceivably result", etc., clause is speculative and conclusory. It certainly is no foundation to justify an exemption. The "could, conceivably, inflame the public" clause not only is speculation, but smacks of public censorship, which would not appear to be the purpose of [the] FOIA. There may possibly be occasions where public safety requires minimal delay of announcements, *but not for eight weeks* and not on such a speculative basis. [*Id.* at 507-508; emphasis added.]

If the Court were troubled by an eight-week delay, one can only speculate how much stronger a negative reaction it would have to a delay of over 2½ *years* from the date a party filed its initial FOIA request.

grand jury has adjourned and returned no indictments relating to these thefts.[5] We see no basis, in state or federal cases construing the Michigan FOIA or its federal counterpart, for the proposition that an "open" investigation can be construed to continue until the expiration of the applicable period of limitation for criminal prosecution without active, ongoing law enforcement *investigation*. Indeed, in *Evening News*, *supra* at 484, the requested documents related to a homicide. There was at the time of the *Evening News* decision, and there is now, no statute of limitations for the crime of murder. See MCL 767.24; MSA 28.964. Conceivably, under the city's theory, a public body could withhold documents related to a homicide investigation in perpetuity. In this regard, we emphasize that we narrowly construe the exemptions from disclosure provided by the FOIA. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 231-232; 507 NW2d 422 (1993); *Newark Morning Ledger Co v Saginaw Co Sheriff*, 204 Mich App 215, 218; 514 NW2d 213 (1994).

Accordingly, although we find no error on the part of the trial court, we remand to the trial court for the limited purpose of a factual determination regarding the current existence of any "open, ongoing criminal investigation" that the city asserts is underway that would be interfered with by disclosure of the relevant documents.[6] If the trial court again finds, using one or more of the appropriate options under the *Evening*

---

[5] We do note that in *Evening News*, *supra* at 517, the defendants conceded that the investigation was closed. The city has obviously made no such concession here.

[6] As stated in *Docal v Bennsinger*, 543 F Supp 38, 44, n 12 (MD Pa, 1981), considerations that have prevented disclosure in connection with an ongoing criminal investigation have included fears of revealing

*News* three-step procedure, the current existence of such an investigation, the city may continue to withhold documents previously exempted from disclosure under the law-enforcement-proceedings exemption of the FOIA if their release would still interfere with law enforcement proceedings. However, if the trial court finds that the investigation has concluded or that the release of certain documents would not interfere with the investigation at its current stage, the city must disclose the appropriate documents. In this regard, as noted in *Evening News, supra* at 516-517, Judge J. Skelly Wright's reference in *Ray v Turner,* 190 US App DC 290, 304, n 10; 587 F2d 1187 (1978) (Wright, J., concurring), to the words of James Madison is of particular relevance:

> " 'Knowledge will forever govern ignorance, and a people who mean to be their own governors, must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both.' "

---

(1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act [18 USC 3500], (12) attorney work product, (13) the methods of surveillance, (14) subjects of surveillance. *Kanter v Internal Revenue Service,* 433 F Supp 812, 822, n 18 (ND Ill, 1977). See, *New England Medical Center Hospital v NLRB,* 548 F2d 377 (1st Cir, 1976); *National Public Radio v Bell,* 431 F Supp 509 (D DC, 1977); *Electric-flex Co v NLRB,* 412 F Supp 698 (ND Ill, 1976).

### III. THE UNWARRANTED INVASION OF PRIVACY EXCEPTION OF THE FOIA

Herald argues that the trial court applied an incorrect legal standard in determining that certain documents were exempt from disclosure under the FOIA exemption provided by MCL 15.243(1)(b)(iii); MSA 4.1801(13)(1)(b)(iii) because their disclosure would result in an unwarranted invasion of privacy. Again, Herald does not contest the trial court's factual findings.

Herald initially contends that the trial court erred because it did not look at the threshold question whether the information it requested was of a personal nature. Subsection 13(1)(b)(iii), upon which the trial court relied, does not contain the explicit language of subsection 13(1)(a), which requires that the information be "of a personal nature."[7] Nevertheless, in *Pennington v Washtenaw Co Sheriff*, 125 Mich App 556, 566; 336 NW2d 828 (1983), this Court indicated that appropriate nondisclosure of requested information on the basis of subsection 13(1)(b)(iii) is limited to " 'intimate details of a highly personal nature.' " (Citation omitted.) In any event, the trial court did as a threshold matter examine the nature of the requested documents. The trial court stated that, if it determined that the information was of a private

---

[7] Subsection 13(1)(a) provides a general FOIA exemption (regardless of whether the requested record is related to law enforcement purposes) for "[i]nformation of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." Subsection 13(1)(b)(iii) provides an FOIA exemption for "[i]nvestigating records compiled for law enforcement purposes" to the extent that disclosure as a public record would "[c]onstitute an unwarranted invasion of personal privacy."

nature, then it would determine if disclosure of the information was nevertheless warranted.

Herald also contends that the trial court used a balancing test to determine whether to release the documents although the Michigan Supreme Court has not sanctioned such a balancing test. The participating justices in *State Employees Ass'n v Dep't of Management & Budget*, 428 Mich 104; 404 NW2d 606 (1987), split, with no majority in agreement, with regard to the test that should be applied to determine if disclosure would result in an unwarranted invasion of privacy. In that case, the three justices who joined in the plurality opinion concluded that a balancing test should not be used. *Id.* at 126 (CAVANAGH, J., joined by LEVIN and ARCHER, JJ.) These justices were of the view that a trial court must determine case by case whether the common-law principles of invasion of privacy apply. *Id.* at 123-126. The three other justices, in separate opinions, argued that the trial court should apply a balancing test in which the invasion of privacy is balanced against the purpose for which the information is sought. *Id.* at 128 (BRICKLEY, J.), 129 (BOYLE, J.), 130-131 (RILEY, C.J.).

In light of *State Employees, supra*, this Court has previously applied in alternative analyses both a balancing test and the common-law privacy test. *Detroit Free Press, Inc v Oakland Co Sheriff*, 164 Mich App 656, 668-669; 418 NW2d 124 (1987). The trial court also used this approach, noting that courts have applied different standards to the privacy exemption. The trial court articulated the balancing test of weighing the invasion of privacy against the purpose of the disclosure. See *id.* at 661-662. The trial court also articulated the common-law standard of invasion of

privacy, that one who publicizes a matter concerning the private life of another is subject to liability if the publicized matter would be highly offensive to a reasonable person. See *id.* at 663-664. The trial court appropriately applied both standards. Thus, we find that the trial court did not apply an incorrect legal standard.[8]

### IV. SEPARATION OF EXEMPT FROM NONEXEMPT MATERIALS UNDER THE FOIA

Herald argues that the city violated the FOIA by not separating exempt from nonexempt materials. However, Herald failed to preserve this issue for review because Herald did not raise it in the trial court. We need not review issues raised for the first time on appeal although we may do so to prevent manifest injustice. *Pittsburgh Tube Co v Tri-Bend Inc*, 185 Mich App 581, 590; 463 NW2d 161 (1990). We perceive no manifest injustice from our refusal to address this unpreserved issue. From our review of the record, the city did actually separate and disclose materials that it classified as nonexempt under the FOIA when Herald first requested documents related to the apparent evidence room thefts. Thus, this situation is different from that in *Evening News, supra* at 512-513, where the defendants made no attempt whatever to separate admittedly nonexempt materials from materials that the defendants claimed were exempt from disclosure.

---

[8] Because the same result is reached under either the balancing test or the common-law privacy test, as in *Detroit Free Press, supra*, we need not conclude which test is appropriate.

### V. PROCEDURAL SAFEGUARDS OF THE FOIA

Herald argues that the trial court and the city violated the FOIA by failing to follow procedural safeguards of the FOIA. We find no error requiring reversal.

Herald asserts that the city's initial response failed to meet the statutory requirements of the FOIA because it did not identify with particularity the documents it was withholding and the exemptions that the city claimed applied to those documents. While the city's initial response may not have complied with the requirements of the FOIA, the city complied with the trial court's order to file a bill of particulars identifying each individual document and explaining how each claimed exemption applied to each document. Such a bill of particulars complies with the procedural requirements of the FOIA. *Evening News, supra* at 503. Thus, no error requiring reversal occurred.

Herald also argues that the trial court erred in not allowing it or its counsel access to the city's bill of particulars under the third step of the three-step procedure of *Evening News, id.* at 516, that trial courts are to use in deciding FOIA cases. However, as discussed above, the Michigan Supreme Court did not mandate application of each step of the three-step procedure. Rather, as appropriate in a particular case, a trial court may follow one *or* more of the three steps. *Id.* Indeed, the use of step three, allowing a plaintiff's counsel to have access in camera to contested documents, should be strictly limited. *Post-Newsweek Stations, Michigan, Inc v Detroit,* 179 Mich App 331, 337; 445 NW2d 529 (1989). We find no error in the trial court's using only steps one and two of the procedure set forth in *Evening News, supra* at 516.

Herald also claims that the trial court erred because it did not expedite this matter as required by the FOIA. However, this issue is moot. In light of our conclusion that Herald has not established any error in the substance of the trial court's decision, it would be impossible for us to fashion an appropriate remedy for any arguably undue delay by the trial court in reaching that decision. *Michigan Nat'l Bank v St Paul Fire & Marine Ins Co*, 223 Mich App 19, 21; 566 NW2d 7 (1997). Nevertheless, six months was not an unreasonable amount of time for the trial court to take to issue a decision given the volume of documents and the complexity of the issues in this case.

Affirmed, but remanded for further proceedings consistent with part II of this opinion. No costs, a question of public significance being involved. We do not retain jurisdiction.