BADALAMENT, INC., Plaintiff,

v.

MEL–O–RIPE BANANA BRANDS,
LTD. and Carmine Pitoscia,
Defendants.

No. 00–CV–74085–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 29, 2001.

Daniel J. McGlynn, Eric R. Swanson, Duffy & Robertson, Bloomfield Hills, MI, for Badalament, Incorporated, plaintiffs.

Gerard V. Mantese, Martha J. Olijnyk, Mantese, Miller, Troy, MI, for Mel–O–Ripe Banana Brands, Ltd., Carmine Pitoscia, defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### BACKGROUND

On October 10, 2000, Plaintiff filed the instant action against Defendants Mel–O–

Ripe Banana Brands, Ltd. and Carmine Pitoscia alleging four counts: Breach of Contract (Count I), Account Stated (Count II), Unjust Enrichment (Count III), and Quantum Meruit (Count IV). Defendants filed their Answer and Affirmative Defenses on October 31, 2000, amended on November 13, 2000. Defendant Mel–O–Ripe filed Proposal in Bankruptcy under the laws of Canada, staying the suit against Defendant Mel–O–Ripe. Plaintiff claims that Defendant Pitoscia admitted certain allegations in the Answer which establish Plaintiff's breach of contract claim, and, therefore, there are no genuine issues as to any material fact for trial. Plaintiff has now filed the instant motion against Defendant Pitoscia only.

In response, Defendant Pitoscia claims that for over 35 years, two generations of families, the Pitoscias and the Badalaments, have been doing business together in the wholesale product market. Plaintiff Badalament is a Detroit close corporation and Defendant Mel–O–Ripe is a Toronto company. Beginning in 1998, Mel–O–Ripe started to purchase bananas heavily from Badalament in an effort to lower costs. Defendants claim that Badalament was eager to increase its market share that it began to sell its goods to Mel–O–Ripe's competitors at lower prices which resulted in Mel–O–Ripe to lower its prices to compete, losing profits. Badalament accumulated about $550,000 in payable from Mel–O–Ripe which Mel–O–Ripe paid half of the amount in 1999. Defendants claim Badalament was well aware of Mel–O–Ripe's financial problems in 1999. Defendant Pitoscia had numerous conversations with the Badalaments about the problem. Badalament continued to encourage Mel–O–Ripe to buy from Badalament. As a result of Badalament's continued to sales to Mel–O–Ripe at prices higher than sales to Mel–O–Ripe's competitors, Mel–O–Ripe's financial situation did not improve. Mel–O–

Ripe was forced to sell some of its warehouses and other assets. In the Fall of 1999, Mel–O–Ripe realized Badalament was dumping its bananas with Mel–O–Ripe's competitors. Badalament began demanding full payment of all open invoices, contrary to Badalament's promises to work with Mel–O–Ripe. Negotiations were held but an agreement could not be negotiated. Mel–O–Ripe was forced to file bankruptcy in Canada and it is in the process of restructuring and negotiating with its creditors, including Plaintiff.

## ANALYSIS

### A. Standard of Review

Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1463 (E.D.Mich. 1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true. *Janan v. Trammell,* 785 F.2d 557, 558 (6th Cir.1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a

material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. A court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## B. *Breach of Contract/Account Stated*

 A plaintiff must establish the following to state a breach of contract claim: 1) that the parties entered into a valid enforceable contract that included the terms and conditions claimed by plaintiff; 2) that the defendant breached the contract; and, 3) that the defendant's breach caused a loss to the plaintiff. *Platsis v. E.F. Hutton & Co.,* 642 F.Supp. 1277 (W.D.Mich.1986); *Pittsburgh Tube Co. v. Tri–Bend, Inc.,* 185 Mich.App. 581, 463 N.W.2d 161 (1990).

MCLA 600.2145 provides that if the plaintiff or someone in his behalf makes an affidavit of the amount due, filing an affidavit and account on defendant with the complaint, such affidavit shall be deemed prima facie evidence of such indebtedness unless the defendant with his answer or by an agent, makes an affidavit and serves a copy thereof on the plaintiff denying the same.

Plaintiff claims that Defendant has failed to file a counter-affidavit as to the account stated. In response, Defendant has properly answer Plaintiff's claim for account stated by denying such a claim in its Answer and its First Amended Answer. Defendant further claims that Plaintiff did not comply with MCLA 600.2145 since Plaintiff did not file a copy of the account with its complaint and no affidavit was filed with the amount due with its complaint. The Complaint was not a verified complaint, therefore, it could not state a prima facie evidence of an account stated. Defendant further argues that discovery has not began, let alone completed, therefore, Defendant has not had an opportunity to discover any facts relating to the Complaint or Defendant's affirmative defenses.

A review of the Complaint shows that no affidavit has been filed as to the amount due on the account as required by MCLA 600.2145. The Complaint, as claimed by Defendant, is not a verified complaint. Defendant properly rebutted Plaintiff's Complaint as to the account stated in the Answer and Affirmative Defenses, and the amended Answer and Affirmative Defenses by denying the claim. There are questions of fact as to the Account Stated. Additionally, Defendant Pitoscia has denied the personal guarantee is enforceable against him. Defendant has stated affirmative defenses of fraud, misrepresentations, economic duress, lack of

mutual assent, estoppel, the contract is void or voidable, accord and satisfaction, waiver, failure to exhaust available remedies under MCLA 600.2952 and the personal guaranty is unenforceable. Finally, Defendant has not had the opportunity to depose of the Badalaments regarding the misrepresentations to Pitoscia. Lack of discovery makes dispositive motion premature. Defendant claims his defenses, such as fraudulent inducement, are essentially an issue of fact to which discovery is needed. *See Williams v. Garcia*, 569 F.Supp. 1452, 1455 (E.D.Mich.1983); *Comstock v. Potter*, 202 Mich. 681, 687, 168 N.W. 994 (1918); *Cole Lakes, Inc. v. Linder*, 99 Mich.App. 496, 504, 297 N.W.2d 918 (1980). Summary judgment is premature at this time. The Plaintiff's motion was filed on February 6, 2001, on the day of the scheduling conference and before discovery began.

### C. *Motion to Stay*

#### 1. *Defendant Mel–O–Ripe*

Plaintiff filed the instant suit against Defendants in September 2000. On October 4, 2000, Defendant Mel–O–Ripe only filed a Notice of Intention to File a Proposal in Bankruptcy in the Ontario Division of the Official Receiver. The Proposal was filed on November 2, 2000 in the Ontario Superior Court of Justice in Bankruptcy. Both Defendants seek a stay of the proceedings claiming that if the Canadian Court makes its determination on the Proposal then the debt at issue will be discharged and a significant part of the action will become moot.

The main issue is whether the United States federal courts recognize the bankruptcy action in Canada and stay the proceedings. Defendants claim that the Canadian Bankruptcy action is a reorganization action, similar to Chapter 11 proceedings in the United States.

■ A federal court has discretion to exercise its inherent power to stay the proceedings before it. *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Under the principle of international comity, a federal court should give effect to executive, legislative, or judicial acts of another nation. *See Philadelphia Gear Corp. v. Philadelphia Gear de Mexico*, 44 F.3d 187, 191 (3d Cir.1994). Comity is the "recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Federal courts have extended comity to foreign bankruptcy actions. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir.1987). Extending comity to a foreign bankruptcy proceeding enables "the assets of debtor to be disbursed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion." *Cunard S.S. Co. v. Salen Reefer Services, A.B.*, 773 F.2d 452, 457–58 (2d Cir.1985). "Federal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat the claims of local creditors." *Victrix*, 825 F.2d at 714. A party seeking a stay of judicial proceeding based on a foreign bankruptcy proceeding must demonstrate that "(1) the foreign bankruptcy court shares our policy of equal distribution of assets; and (2) the foreign law mandates the issuance or at least authorizes the request for the stay." *Philadelphia Gear*, 44 F.3d at 193.

■ Courts have consistently extended comity to Canadian bankruptcy proceed-

ings finding that Canada's Bankruptcy and Insolvency Act ("BIA") contains a comprehensive procedure for the orderly marshaling and equitable distribution of Canadian debtor's assets which closely resembles under the United States' Bankruptcy Code. *See In re Davis,* 191 B.R. 577, 587 (Bankr. S.D.N.Y.1996); *Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255, 1259 (S.D.N.Y.1979). In determining whether to accord comity to a foreign bankruptcy case, the foreign law need not be identical to the United States' bankruptcy laws but that it is enough that it is not repugnant to American laws and policies. *In re Davis,* 191 B.R. 577, 587 (Bankr.S.D.N.Y.1996).

There is no indication that the bankruptcy proceedings in Canada do not comport with American notions of due process or that extending comity would be prejudicial to the interests of American creditors. *See Philadelphia Gear,* 44 F.3d at 193. Courts have recognized that the marshaling and equitable distribution of a Canadian debtor's assets closely resembles that available under the Bankruptcy Code. *In re Davis,* 191 B.R. at 587. The automatic stay under the BIA, § 69, is similar to that imposed by § 362 of the Bankruptcy Code. *Id.* The BIA recognizes the rights of secured creditors to realize on their collateral, protects that collateral from the claims of unsecured creditors and preserves the right of an undersecured creditor to assert a deficiency claim. *Id.* The BIA provides for the avoidance of fraudulent transfers or preferential payments and contains a comprehensive distribution scheme similar to that under the Bankruptcy Code. *Id.* Estate assets will be wasted if litigation proceeds against the debtor outside of Canada. *Id.* The Supreme Court has noted that New York bondholders be bound by a Canadian reorganization noting that "Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries." *Canada Southern Railway v. Gebhard,* 109 U.S. 527, 539, 3 S.Ct. 363, 27 L.Ed. 1020 (1883). Courts have dismissed actions in the United States where Canadian bankruptcy reorganization was pending. *Id.* at 539, 3 S.Ct. 363.

It should also be noted that the Bankruptcy Court recognizes a foreign proceeding and provides for a foreign representative to petition the Bankruptcy Court to enjoin the commencement or continuation of an action against a foreign debtor who is involved in a foreign bankruptcy action. 11 U.S.C. § 304. The principal goal of § 304 is to permit foreign debtors "to prevent the piecemeal distribution of assets in the United States by means of legal proceedings initiated in domestic courts by local creditors." *In re Koreag,* 961 F.2d 341, 348 (2d Cir.1992). The function of § 304 is a limited one, designed to function in aid of a proceeding pending in a foreign court. *In re Gee,* 53 B.R. 891, 898 (Bankr.S.D.N.Y.1985). Although Defendants in this case have not, to date, chosen to proceed under Section 304 to enjoin its creditors from suit in federal courts in the United States while the Canadian Bankruptcy action is pending, it is important to note that the Legislature has recognized that a foreign debtor currently in bankruptcy in a foreign venue could do so. This goes to the principle of comity afforded a foreign debtor currently in a bankruptcy proceeding outside the Untied States. Conversely, federal courts expect foreign creditors outside the United States to abide by the federal courts' actions under the Bankruptcy Code. For example, in *In re Dow Corning Corp.,* foreign creditors and claimants are participating in the bankruptcy proceeding before this Court.

Where federal jurisdiction is founded on diversity of citizenship, the dis-

trict court should look to the law of the state in which it is situated to determine whether to accord comity to the act of a foreign court. *Daniels v. Powell,* 604 F.Supp. 689, 693 (N.D.Ill.1985). Michigan has recognized that comity mandates that foreign judgment be given force and effect. *See Dart v. Dart,* 460 Mich. 573, 580–81, 597 N.W.2d 82 (1999); *Bang v. Park,* 116 Mich.App. 34, 39–40, 321 N.W.2d 831 (1982). In *Growe v. Growe,* 2 Mich.App. 25, 138 N.W.2d 537 (1965), Michigan courts recognize that based on comity, a divorce judgment in Canada should be given full force and effect, noting,

> Faced as we are here with a judgment from a court of competent jurisdiction which lies but the breadth of a river from the instant court, closer, indeed, than most of the remaining 49 States, and a court which draws its concepts of law from the same roots as ours, comity supplies a rational and well-founded reason for affording relief to this plaintiff.

*Growe,* 2 Mich.App. at 32, 138 N.W.2d 537.

■ In this case, Plaintiff voluntarily entered into a contract with Defendant Mel–O–Ripe, a Canadian corporation. Plaintiff was on notice that it may be subject to the laws of a foreign jurisdiction. *See Fleeger v. Clarkson Co. Ltd.,* 86 F.R.D. 388 (N.D.Texas 1980) (a stay based on a Canadian bankruptcy proceeding was granted because the plaintiff voluntarily purchased shares in a Canadian corporation which put him on notice that his rights would be subject to Canadian law); *Cunard S.S.,* 773 F.2d at 458 (court extended comity to foreign bankruptcy stay where relationship between the parties was voluntary); *Cornfeld,* 471 F.Supp. at 1255 (court stressed voluntary subjection of plaintiff to Canadian law). Plaintiff and Defendants have been doing business for 35 years. Plaintiff knew Defendants were located in Canada.

Based on the principle of comity, the case should be stayed or dismissed, pending the bankruptcy action in Canada.

### 2. *Individual Defendant Pitoscia*

Defendant Carmine Pitoscia is not in bankruptcy. Defendant Pitoscia also seeks to stay the proceedings against him.

■ The automatic provision of the Canadian BIA does not provide for an automatic stay against a non-bankruptcy co-defendant. Neither does the Bankruptcy Code's § 362(a) provide for an automatic stay against a non-bankrupt party. However, Courts have stayed proceedings against non-debtor co-defendants in unusual circumstances and pursuant to 11 U.S.C. § 105(a) against non-debtor defendants who were officers or directors of the debtor. *In re American Film Technologies, Inc.,* 175 B.R. 847, 850 (Bankr.D.Del.1994). Although §§ 105(a) and 362 are inapplicable in this instance since this matter is not proceeding under the Bankruptcy Code, the same analysis will be used in this case since it is analogous to a bankruptcy proceeding in the United States. "Unusual circumstances" exist when "there is such identity between the debtor and third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor" or where the protection of a stay is essential to the debtor's reorganization efforts. *See McCartney v. Integra Nat'l Bank North,* 106 F.3d 506, 510 (3d Cir.1997) (quoting *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986)).

■ In this case, Defendant Pitoscia is the President of Mel–O–Ripe. There may be issues of indemnity between Pitoscia and Mel–O–Ripe. Although the allegations against Defendant Pitoscia involve a

personal guarantee, because it involves the business of Mel–O–Ripe, there is a strong identity between the Debtor Mel–O–Ripe and Pitoscia. As Defendant Pitoscia has stated in his affidavit in support of his response to the summary judgment motion, the parties and families have been in business together for 35 years. It appears that Mel–O–Ripe is a family-owned business. Any liability by Mel–O–Ripe may have to involve monies and agreements between Mel–O–Ripe and Defendant Pitoscia which may be before the bankruptcy court in Canada. It appears that Defendant Pitoscia is closely intertwined with the identity of Mel–O–Ripe, and, as an officer of the Debtor, should also be entitled to a stay.

Plaintiff submitted a supplemental brief attaching an Amended Proposal to the BIA in Canada indicating that the officers of the corporation would not be released nor discharged. The Court agrees that this shows that an Defendant Pitoscia may not be released nor discharged once a Plan has been approved by the BIA. However, this does not preclude any other arrangements the parties may enter into, with approval of the BIA, regarding the ultimate provisions in the Plan. The Amended Proposal does not preclude a stay in this matter against Defendant Pitoscia based on the cases cited above.

## *CONCLUSION*

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment **(Docket No. 11, filed February 6, 2001)** is DENIED without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Ex Parte Motion to File Reply Brief in Excess of 5 pages **(docket no. 17, filed March 26, 2001)** is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motions for Stay of the Proceedings **(Docket No. 20, filed March 30, 2001 and No. 24, filed April 9, 2001)** are GRANTED.

IT IS FURTHER ORDERED that the action is **STAYED and ADMINISTRATIVELY CLOSED**. The action may be reopened once a party provides the Court with notice that the bankruptcy stay has been lifted.