STATE NEWS v MICHIGAN STATE UNIVERSITY

Docket No. 271433. Submitted February 7, 2007, at Lansing. Decided March 6, 2007, at 9:15 a.m. Leave to appeal sought.

State News brought an action in the Ingham Circuit Court against Michigan State University after the university denied the plaintiff's request for information under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*. The FOIA request concerned a police incident report related to an assault in a dormitory on the university's campus. The court, Joyce Draganchuk, J., dismissed the plaintiff's complaint, concluding that the university had met its burden of showing that the report was exempt from disclosure under the privacy exemption, MCL 15.243(1)(a), and the law-enforcement-purpose exemption, MCL 15.243(1)(b), of FOIA. The court did not consider the plaintiff's request to determine whether the report contained nonexempt information that could be separated from the exempt information and released. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred by determining that the university had met its burden with regard to its claim that the law-enforcement-purpose exemption applied to the entire report. As relevant to this case, MCL 15.243(1)(b)(*i*) through (*iii*) allows a public body to exempt from disclosure investigating records compiled for law enforcement purposes, but only to the extent that disclosure would interfere with law enforcement proceedings, deprive a person of the right to a fair trial, or constitute an unwarranted invasion of personal privacy. A public body must disclose all public records that are not specifically exempt, and the public body must provide a complete particularized justification for the exemption. Information in the report concerning the names, addresses, or other identifying information of the suspects may be exempt under MCL 15.243(1)(b)(*iii*) as an unwarranted invasion of personal privacy. In exempting the entire report, however, the trial court relied on assertions that disclosure might provide the opportunity for retaliation by the criminal defendants or the victims. Witnesses' fear of retaliation, if substantiated can provide a reason not to reveal their testimony, but the trial court's rationale as articulated,

expressing only a possibility, was insufficient to support its conclusion concerning the entire report.

2. The trial court erred by determining that the entire report was exempt from disclosure under the privacy exemption. Under MCL 15.243(1)(a), a public body may exempt from disclosure as a public record information of a personal nature if public disclosure would constitute a clearly unwarranted invasion of an individual's privacy. Information is of a personal nature if, considering the customs, mores, or ordinary views of the community, it reveals intimate or embarrassing details of an individual's private life. Information that is not of a personal nature is subject to disclosure without considering any invasion of privacy. If the requested information is of a personal nature, however, the court must determine whether disclosing it would constitute a clearly unwarranted invasion of the individual's privacy. To do so, the court must balance the public interest in disclosure against the interest the exemption is intended to protect. The only relevant public interest to be weighed is the extent to which disclosure would contribute significantly to public understanding of the operations or activities of government. Booking photographs in the report are not exempt from disclosure. Portions of the report containing the names, addresses, or other identifying information of the victims, witnesses, and suspects may constitute information of a personal nature. At the same time, however, the report might shed light on campus security practices or the thoroughness of the police investigation.

3. The trial court abused its discretion by failing to review the report in camera. Without such a review, the trial court could not engage in the necessary balancing analysis. This matter must be remanded for the trial court to review the report, consider the exemptions in the manner described in this opinion, and, to the extent practicable, separate exempt information from nonexempt information and make the latter available to the plaintiff, as the university itself was required to do under MCL 15.244. In doing so, the trial court must also consider the extent to which the law-enforcement-purpose exemption may no longer apply because of the current status of the investigation and the criminal trials and whether the passage of time and the course of events may have rendered any of the information a matter of public knowledge and therefore not of a personal nature.

Remanded for further proceedings.

1. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS.

A public body claiming an exemption from disclosure of a public record under the Freedom of Information Act has the burden of

proof with regard to the exemption; the public body must provide detailed affidavits describing the matters to be withheld from disclosure, and the public body's justification of the exemption must be more than conclusory, that is, the public body may not simply repeat the statutory language for the exemption, but must provide complete particulars indicating factually how a document or category of documents fits the exemption; the public body must separate exempt from nonexempt material and make the nonexempt material available (MCL 15.233, 15.244).

2. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS — PRIVACY.

A public body may exempt from disclosure as a public record information of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy; information is of a personal nature if, considering the customs, mores, or ordinary views of the community, it reveals intimate or embarrassing details of an individual's private life; to determine whether disclosing information of a personal nature would constitute a clearly unwarranted invasion of privacy, a court must balance the public interest in disclosure, which is the extent to which disclosure would contribute significantly to public understanding of the operations or activities of the government, against the interest the exemption is intended to protect (MCL 15.243[1][a]).

*Honigman Miller Schwartz and Cohn LLP* (by *Herschel P. Fink* and *Brian D. Wassom*) for the plaintiff.

*Theresa Kelley* for the defendant.

Amici Curiae:

*Debra A. Kowich, Eileen Jennings, Kenneth McKanders, Marvin Krislov, Carol L. J. Hustoles, Louis A. Lessem,* and *Victor A. Zambardi* for the boards of regents of the University of Michigan and Eastern Michigan University; the boards of trustees of Central Michigan University, Western Michigan University, and Oakland University; and the Wayne State University Board of Governors.

*Bernardi, Ronayne & Glusac* (by *John J. Ronayne, III,* and *Katherine W. MacKenzie*) for the Michigan Association of Broadcasters and the Michigan Press Association.

Before: WHITBECK, C.J., and BANDSTRA and SCHUETTE, JJ.

PER CURIAM. Plaintiff State News appeals as of right the trial court's order dismissing its action against defendant Michigan State University (MSU) brought under the Freedom of Information Act (FOIA).[1] State News filed a FOIA request for a copy of a police incident report related to an assault that occurred in a dormitory on MSU's East Lansing campus. MSU denied the request under FOIA's privacy exemption[2] and its law-enforcement-purpose exemption.[3] The trial court agreed that the incident report was exempt from disclosure under these provisions and dismissed the complaint. We remand this matter to the trial court to determine whether there are nonexempt portions of the incident report that can be separated from exempt material and released to State News.

## I. FACTS

### A. THE REQUEST BY STATE NEWS

On March 2, 2006, State News requested from MSU its "police incident report" detailing an incident on February 23, 2006, involving the arrest of three men in connection with an alleged assault that occurred in Hubbard Hall, a student dormitory on MSU's East Lansing campus. Two of the assailants were nonstudents and the other was a student, as was one of the victims. In a news story dated February 27, 2006 (which is part of the record before us), before it made its FOIA request to MSU, State News had already identified the

---

[1] MCL 15.231 *et seq.*

[2] MCL 15.243(1)(a).

[3] MCL 15.243(1)(b).

three arrested men as "MSU student Albert Robinson, a general business administration and pre-law freshman, and nonstudents Roy Holt and Joel Hamlar . . . ." According to the FOIA complaint that State News later filed with the trial court, this incident followed a shooting in the parking lot near Hubbard Hall in September 2005, and there was also a "racially motivated confrontation" at Hubbard Hall in that period.

### B. THE POLICE INCIDENT REPORT

According to an affidavit that MSU's FOIA officer later filed with the trial court, the police incident report contained the following types of information:

> a. Incident report persons sheets: These documents contain personally identifiable information about the victims, witnesses, responding police officers, and defendants (such as name, address, sex, race, weight, height, date of birth, driver's license number, student number, criminal history, and other personal and sensitive information).

> b. Narrative incident reports: These documents consist of statements from the responding officers, witnesses, victims, defendants, and a third party.

> c. Physical evidence documents: These documents consist of photographs of evidence, property sheets, property inventory form, crime scene photographs, laboratory evidence documents, and advice of rights forms.

> d. Inmate profiles/booking photographs: These documents are inmate booking sheets and inmate profile documents, including photographs.

> e. CCH/LEIN [criminal history and Law Enforcement Information Network] information.

### C. THE MSU DENIAL

On March 24, 2006, MSU's FOIA officer denied State News's FOIA request. Citing the privacy exemption and

the law-enforcement-purpose exemption, MSU's FOIA officer denied the request in its entirety, without any reference to MSU's obligation under § 14(1) of FOIA[4] to separate exempt material from nonexempt material and make the nonexempt material available for examination and copying.

### D. THE STATE NEWS APPEAL

On March 29, 2006, State News filed an administrative appeal of the denial by way of a letter to MSU's FOIA officer. However, this appeal was answered not by MSU's FOIA officer, but by MSU President Lou Anna K. Simon. In a letter dated April 6, 2006, President Simon determined that "the police records at issue were properly withheld." Like MSU's FOIA officer, President Simon did not refer to MSU's obligation under § 14(1) of FOIA to separate exempt material from nonexempt material and make the nonexempt material available for examination and copying. We note that, according to the February 27, 2006, *State News* story, Robinson, Holt, and Hamlar had previously been arraigned on charges of home invasion, felonious assault, and possession of a firearm during the commission of a felony. Thus, at least some information about these individuals was already part of the public record. We also note, however, that the same story indicated that the Ingham County chief assistant prosecutor would not release the names of any victims.

President Simon closed her April 6 denial letter by stating:

> Finally, I note that in cases where law enforcement proceedings are pending, the University must carefully weigh the applicability of Section 13(1)(b) of the FOIA

---

[4] MCL 15.244(1).

[MCL 15.243(1)(b)] so that it does not disclose information that would interfere with an ongoing criminal investigation, interfere with ongoing action by the Ingham County Prosecutor's Office, or deprive any person of the right to a fair trial.

Counsel for State News on May 1, 2006, wrote to President Simon to request that she reconsider her decision to withhold release of the police incident reports. However, on May 8, 2006, counsel for MSU responded by asserting, among other things, that "release of the police report does not serve the core purpose of FOIA because the report would not 'significantly contribute' to the public's understanding of University operations."

### E. THE STATE NEWS FOIA COMPLAINT

State News filed its original FOIA complaint in the Oakland Circuit Court on May 19, 2006. However, that court granted MSU's change-of-venue motion, and, on May 31, 2006, State News refiled its complaint in the Ingham Circuit Court and moved for an order to direct MSU to show cause why it should not be ordered to comply with State News's FOIA request. State News also moved for summary disposition under MCR 2.116(C)(9) and (10). At the time the complaint was filed, the preliminary examinations of two of the criminal defendants were scheduled for June 9, 2006, and the other defendant was already scheduled for trial in the Ingham Circuit Court.

### F. THE TRIAL COURT DECISION

The trial court held a hearing on the motion to show cause on June 8, 2006. The trial court concluded that MSU had met its burden to show that the requested records were exempt from disclosure under the privacy exemption and the law-enforcement-purpose exemption, and dismissed State News's complaint with prejudice.

The trial court noted that the incident report included the names, addresses, criminal histories, and other identifying information of the parties involved. It reasoned that the victims and witnesses were "private citizens" who were "innocently involved in something for which they could and would suffer embarrassment if their names and/or other information are divulged." It concluded that disclosure of this personal information would constitute a clearly unwarranted invasion of privacy because it "is not related to the workings of government, and would not contribute significantly to the public's understanding of the workings of government," and that MSU had shown with sufficient particularity that release of the report would interfere with law enforcement proceedings and deprive the criminal defendants of a fair trial.

The trial court refused to consider State News's request to determine whether there was nonexempt information in the report that could be separated from the exempt information, stating, "I can't conclude that any of this information would shed light on the functioning of government, much less contribute significantly to the public's understanding of the functioning of government." On the record before us, it is clear that the trial court did not conduct an in camera review of the police incident report. Rather, the trial court simply determined, without reviewing the report's contents, that nothing in it should be disclosed. This appeal then ensued.

## II. GENERAL MATTERS

### A. THE EFFECT OF THE PASSAGE OF TIME

We note at the outset that the passage of time may have affected aspects of this appeal and that, while we can make some observations based on the record, there

are other aspects about which we can only speculate. We know from the record that before it made its FOIA request to MSU, State News had already identified the three men arrested at Hubbard Hall. Thus, at least the names of these men and some identifying information about them were in the public domain. We know from the record that when President Simon issued her April 6, 2006, denial, these men had already been arraigned on charges of home invasion, felonious assault, and felony-firearm. Further information about these men might therefore have been in the public domain at that time, but the record before us does not disclose what that information might be. We also know from the record that when the trial court issued its June 8, 2006, decision, one of these men had been scheduled for trial and the preliminary examinations for the remaining two were scheduled for the next day. From the record before us, however, we do not know whether trials have now been held or, if so, what the results of those trials may have been and what information might have entered into the public domain during the course of later proceedings.

Rather obviously, public bodies and trial courts can only make decisions on FOIA matters on the basis of the information that is before them at the time, and it is not the function of appellate courts to second-guess those decisions on the basis of information that later becomes available. Here, because we do not have the any information about what may have transpired after the trial court's June 8 decision, we could not engage in such second-guessing in any event. We do observe, however, that the subsequent availability of information as a result of later court proceedings in the criminal justice system may well strengthen or weaken the arguments of the parties to a FOIA dispute regarding

the applicability of the privacy exemption and the law-enforcement-purpose exemption.

As a practical matter, we suspect that this subsequent information, of which the trial court can take judicial notice on remand under appropriate procedures,[5] will weaken MSU's position and strengthen State News's position. But, ironically, the newsworthiness of the information contained in the police incident report may also have decreased over time. However, FOIA is not concerned with newsworthiness. Rather, it is concerned with requiring the disclosure of nonexempt public records so as to ensure accountability.

## B. THE CONCEPT OF ACCOUNTABILITY

Under FOIA, it is the public policy of Michigan that all persons, except prisoners, "are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees . . . . The people shall be informed so that they may fully participate in the democratic process."[6]

We note in this regard that FOIA therefore is a "prodisclosure statute."[7] We interpret its disclosure provisions broadly to allow public access, and we interpret its exceptions narrowly so that we do not undermine its disclosure provisions.[8] Central to both the broad policy and the implementing mechanisms of

[5] MRE 201.

[6] MCL 15.231(2); see also *Larry S Baker, PC v Westland,* 245 Mich App 90, 93; 627 NW2d 27 (2001).

[7] *Herald Co v Bay City,* 463 Mich 111, 119; 614 NW2d 873 (2000) (noting that "FOIA is a prodisclosure statute" and that its exemptions are narrowly construed).

[8] *Kent Co Deputy Sheriffs' Ass'n v Kent Co Sheriff,* 238 Mich App 310, 313; 605 NW2d 363 (1999).

FOIA is the concept of accountability.[9] FOIA, through its disclosure provisions, allows the citizens of Michigan to hold public officials accountable for the decisions that those officials make on their behalf. By shifting the balance away from restricted access to open access in all but a limited number of instances, the Legislature necessarily determined that, except in those limited instances, disclosure facilitates the process of governing because it incorporates the concept of accountability.

### III. STATUTORY LANGUAGE

#### A. THE PRIVACY EXEMPTION

Section 13(1)(a)[10] of FOIA states that a public body may exempt from disclosure "[i]nformation of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy."

#### B. THE LAW-ENFORCEMENT-PURPOSE EXEMPTION

Section 13(1)(b)[11] of FOIA states that a public body may exempt from disclosure investigating records com-

---

[9] See, e.g., *Detroit Free Press, Inc v City of Warren*, 250 Mich App 164, 168-169; 645 NW2d 71 (2002) ("Under . . . FOIA, citizens are entitled to obtain information regarding the manner in which public employees are fulfilling their public responsibilities."); *Manning v East Tawas*, 234 Mich App 244, 248; 593 NW2d 649 (1999) (noting that FOIA is a manifestation of the state's public policy recognizing the need that public officials be held accountable for the manner in which they perform the duties); *Thomas v New Baltimore*, 254 Mich App 196, 201; 657 NW2d 530 (2002) (explaining that FOIA was enacted "recognizing the need for citizens to be informed so that they may fully participate in the democratic process and thereby hold public officials accountable for the manner in which they discharge their duties").

[10] MCL 15.243(1)(a).

[11] MCL 15.243(1)(b).

piled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

(*i*) Interfere with law enforcement proceedings.

(*ii*) Deprive a person of the right to a fair trial or impartial administrative adjudication.

(*iii*) Constitute an unwarranted invasion of personal privacy.

(*iv*) Disclose the identity of a confidential source, or if the record is compiled by a law enforcement agency in the course of a criminal investigation, disclose confidential information furnished only by a confidential source.

(*v*) Disclose law enforcement investigative techniques or procedures.

(*vi*) Endanger the life or physical safety of law enforcement personnel.

### IV. STANDARD OF REVIEW

#### A. LEVELS OF REVIEW

The Michigan Supreme Court recently clarified the standards of review that govern FOIA appeals, setting out a three-level standard of review:

First, we continue to hold that legal determinations are reviewed under a de novo standard. Second, we also hold that the clear error standard of review is appropriate in FOIA cases where a party challenges the underlying facts that support the trial court's decision. In that case, the appellate court must defer to the trial court's view of the facts unless the appellate court is left with the definite and firm conviction that a mistake has been made by the trial court. Finally, when an appellate court reviews a decision committed to the trial court's discretion, such as the balancing test at issue in this case, we hold that the appellate court must review the discretionary determina-

tion for an abuse discretion and cannot disturb the trial court's decision unless it falls outside the principled range of outcomes.[12]

### B. LEGAL STANDARDS

Under FOIA, a public body must disclose all public records that are not specifically exempt.[13] To meet its burden when claiming an exemption, the public body "should provide complete particularized justification, rather than simply repeat statutory language."[14] In *Evening News Ass'n v City of Troy*,[15] the Michigan Supreme Court set forth the following rules that should be used in analyzing a claim of exemption from disclosure under FOIA:

1. The burden of proof is on the party claiming exemption from disclosure.

2. Exemptions must be interpreted narrowly.

3. "[The] public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying."

4. "[D]etailed affidavits describing the matters withheld" must be supplied by the agency.

5. Justification of exemption must be more than "conclusory", *i.e.*, simple repetition of statutory language. A bill of particulars is in order. Justification must indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings.

---

[12] *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006); see also *Larry S Baker, supra* at 93 ("Whether a public record falls within a statutory exemption under FOIA is a question of law that we review de novo.").

[13] MCL 15.233(1); *Larry S Baker, supra* at 94.

[14] *Detroit Free Press, Inc v City of Warren, supra* at 167.

[15] *Evening News Ass'n v City of Troy*, 417 Mich 481, 503; 339 NW2d 421 (1983) (citations omitted).

6. The mere showing of a direct relationship between records sought and an investigation is inadequate.[16]

V. ANALYSIS

A. OVERVIEW

In this case, the parties advocate diametrically opposing views. State News argues that all the records and reports in the criminal matter must be disclosed and that none of the information is private. MSU, on the other hand, would declare that even the name of a defendant after a public arraignment is personal and, therefore, private information prohibited from disclosure. We find both parties' arguments to be untenable.

B. THE LAW-ENFORCEMENT-PURPOSE EXEMPTION

(1) THE ARGUMENTS OF THE PARTIES

State News argues that the trial court erroneously concluded that the incident report was exempt under FOIA's law-enforcement-purpose exemption. As noted earlier, this exemption in relevant part allows a public body to exempt from disclosure investigating records compiled for law enforcement purposes, but only to the extent that disclosure would interfere with law enforcement proceedings, deprive a person of the right to a fair trial, or constitute an unwarranted invasion of personal privacy.[17] State News further argues that MSU offered only conclusory statements in support of its contention that disclosure of the police incident report would interfere with the law enforcement proceedings and

---

[16] Although these rules were primarily directed to the *Evening News* Court's analysis of the law-enforcement-purposes exemption, with the exception of rule 6, we find them generally applicable to any claim of exemption from disclosure under FOIA.

[17] MCL 15.243(1)(b)(*i*), (*ii*), and (*iii*).

jeopardize the right of the criminal defendants to a fair trial, and that the trial court erred by merely accepting these statements rather than making its own particularized findings.

Again, we note that a public body seeking to withhold information because disclosure would interfere with law enforcement proceedings must establish particularized justification for the claim.[18] The public body must show how disclosure would interfere with a pending investigation by more than conclusory statements, i.e., "simple repetition of statutory language."[19] Grounds for preventing disclosure in connection with an ongoing criminal investigation include fears of revealing evidence, witnesses, prospective testimony, the transactions being investigated, the direction of the investigation, governmental strategy, prospective new defendants, and the scope and limits of the government's investigation.[20]

### (2) MSU'S PROPOSED JUSTIFICATION

In the affidavits that MSU presented to the trial court, there were a number of grounds asserted to support the contention that the police incident report should not be disclosed. MSU's police chief, James Dunlap, averred that release of the police incident report would interfere with his department's ongoing investigation by revealing witness identities and new leads, alerting potential new witnesses and prospective new defendants, and revealing the direction of the investigation. Additionally, Ingham County Assistant Prosecutor Linda Maloney asserted that the report was

---

[18] *Evening News, supra* at 493-494; *Herald Co, Inc v City of Kalamazoo,* 229 Mich App 376, 384; 581 NW2d 295 (1998).

[19] *Evening News, supra* at 497, 503.

[20] *Id.* at 511; *Herald Co, Inc v City of Kalamazoo, supra* at 386 n 6.

subject to exemption because witnesses and victims were fearful of retaliation by the criminal defendants, and their cooperation would be negatively affected by the release of their personal information; release of the defendants' personal information would provide an opportunity for the victims to retaliate; and release of the parties' narrative statements would deprive the defendants of their right to a fair trial, including disseminating inadmissible evidence to the jury pool and altering the testimony of witnesses.

### (3) THE TRIAL COURT'S DECISION

With respect to the requirement of particularized justification, the trial court reasoned:

> I do recognize that with respect to [the law-enforcement-purpose] exemption, there is a requirement of a particularized showing that it would interfere with law enforcement proceedings, or deprive a person of a fair trial. And in this Court's view there has been a particularized showing by the affidavit of the Chief Assistant Prosecutor and Chief Dunlap in that they have established that there is a potential for retaliation, of witness names and other information about witnesses to be released. There is that potential. Witnesses do not get police reports and do not have that information available to them, and to release it to the public creates the possibility of retaliation by anyone who has an interest in retaliating. Also, the name and addresses of the accused can cause potential for retaliation, and also allow inadmissible evidence to be publicly disseminated to potential jurors and also interfere with law enforcement and the administration of justice by allowing witnesses to know what other witnesses said by tainting their testimony as well as interfering with the Prosecutor's ability to assess the witness' credibility and to argue a witness' credibility effective in front of the jury.

### (4) MCL 15.243(1)(b)(*i*) AND (*ii*): INTERFERENCE WITH LAW ENFORCEMENT PROCEEDINGS AND DEPRIVATION OF THE RIGHT TO A FAIR TRIAL

As mentioned, MSU presented a number of grounds to support the contention that the police incident report should not be disclosed. But the trial court primarily relied on two interlocking assertions. The first was Maloney's assertion that disclosing the narrative statements in the police incident report "will provide an opportunity" for the criminal defendants to retaliate against the victims and vice versa. The trial court picked up on this assertion and spoke several times to the "potential" or the "possibility" of retaliation. The second assertion on which the trial court relied was Maloney's statement that release of the police incident report would deprive the criminal defendants of their right to a fair trial. Relying on that assertion, the trial court concluded that

> the name and addresses of the accused *can* . . . allow inadmissible evidence to be publicly disseminated to potential jurors and also interfere with law enforcement and the administration of justice by allowing witnesses to know what other witnesses said by tainting their testimony as well as interfering with the Prosecutor's ability to assess the witness' credibility and to argue a witness' credibility effective in front of the jury. [Emphasis added.]

Without more particularized reasons articulated on the record, however, the trial court's rationale is insufficient to uphold the trial court's conclusion that the entire report is exempt from disclosure.

The law-enforcement-purpose exemption is positive.[21] Therefore, it was MSU's duty to show, and the trial court's duty to find, that the particular information that State News wanted "*would* . . . [i]nterfere

---

[21] *Evening News, supra* at 506.

with law enforcement proceedings[,] . . . [d]eprive a person of the right to a fair trial [, or] [c]onstitute an unwarranted invasion of personal privacy," not merely that it *could* possibly or potentially interfere with or jeopardize the investigation.[22] Witnesses' fear of retaliation, *if substantiated,* can provide "a plausible reason not to reveal their testimony."[23] However, the trial court's findings fail to satisfy the requisite standard.[24] We therefore conclude that by failing to find with sufficient particularity that MSU specifically justified its claim of exemption, the trial court erred in its determination that MSU met its statutory burden.[25]

### (5) MCL 15.243(1)(b)(*iii*): UNWARRANTED INVASION OF PERSONAL PRIVACY

Given the similarities between the federal FOIA,[26] and the Michigan FOIA, this Court deems federal decisions persuasive in the construction of the Michigan act.[27] Thus, we find it significant that in *Dep't of Justice v Reporters Comm for Freedom of Press,*[28] the United States Supreme Court considered the scope of the federal law-enforcement-purpose exemption,[29] commonly known as "Exemption 7(C)," and held that

---

[22] MCL 15.243(1)(b) (emphasis added); *Evening News, supra* at 506; *Herald Co, Inc v City of Kalamazoo, supra* at 379-382.

[23] *Evening News, supra* at 506.

[24] *Evening News, supra* at 506-508.

[25] See *Payne v Grand Rapids Police Chief,* 178 Mich App 193, 200; 443 NW2d 481 (1989).

[26] 5 USC 552.

[27] *Pennington v Washtenaw Co Sheriff,* 125 Mich App 556, 563; 336 NW2d 828 (1983), quoting *Bredemeier v Kentwood Bd of Ed,* 95 Mich App 767, 771; 291 NW2d 199 (1980).

[28] *Dep't of Justice v Reporters Comm for Freedom of the Press,* 489 US 749, 780; 109 S Ct 1468; 103 L Ed 2d 774 (1989).

[29] 5 USC 552(b)(7)(C).

release of a criminal record, or "rap sheet," would be a prohibited invasion of the personal privacy of the person to whom the document referred. Accordingly, to the extent that the police incident report contains the names, addresses, or other identifying information of the suspects, such information may be exemptible.

### C. THE PRIVACY EXEMPTION

#### (1) THE ARGUMENTS OF THE PARTIES

State News argues that the information in the police incident report is not exempt because it is not personal in nature and its disclosure would not constitute an unwarranted invasion of privacy. MSU, on the other hand, argues that involvement in a crime constitutes personal information and that disclosure is not warranted because it would not contribute significantly to public understanding of how the government operates.

#### (2) INTERPRETING THE PRIVACY EXEMPTION

As we noted earlier, under the privacy exemption, a public body may exempt from disclosure as a public record "[i]nformation of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy."[30] Accordingly, the privacy exemption consists of two distinct elements, both of which must be satisfied for the exemption to apply. " 'First, the information must be of a "personal nature," ' and, second, the disclosure of such information must constitute a "clearly unwarranted" invasion of privacy.' "[31] Information that is not of a

---

[30] MCL 15.243(1)(a).

[31] *Mager v Dep't of State Police*, 460 Mich 134, 140; 595 NW2d 142 (1999), quoting *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 232; 507 NW2d 422 (1993).

personal nature is subject to disclosure without considering the second prong of the exemption.[32]

Information is of a personal nature " 'if it reveals intimate or embarrassing details of an individual's private life.' "[33] "Whether a detail is intimate or embarrassing is evaluated in terms of the customs, mores, or ordinary views of the community."[34] If a court determines that the requested information is of a personal nature, it must then determine whether disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.[35] To do so, the court must balance the public interest in disclosure against the interest the exemption is intended to protect.[36] " '[T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government.' "[37]

### (3) THE TRIAL COURT'S DECISION

As we stated earlier, the trial court, noting that the incident report included the names, addresses, criminal histories, and other identifying information of the parties involved, reasoned that the victims and witnesses were "private citizens" who were "innocently involved in something for which they could and would suffer

---

[32] *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 295; 565 NW2d 650 (1997); *Detroit Free Press v City of Warren, supra* at 167-168.

[33] *Mager, supra* at 142, quoting *Bradley, supra* at 294.

[34] *Larry S Baker, supra* at 95.

[35] *Mager, supra* at 144.

[36] *Id.* at 144-145; see also *Detroit Free Press, Inc v Southfield*, 269 Mich App 275, 282; 713 NW2d 28 (2005).

[37] *Mager, supra* at 145 (emphasis and citation omitted).

embarrassment if their names and/or other information
are divulged." It concluded that disclosure of this per-
sonal information would constitute a clearly unwar-
ranted invasion of privacy because it "is not related to
the workings of government, and would not contribute
significantly to the public's understanding of the work-
ings of government."

#### (4) "INFORMATION OF A PERSONAL NATURE"

We agree that being a victim of or witness to a crime
may, at least hypothetically, be as "personal" as being
involved in an automobile accident[38] and that people
linked with a crime, whether as a perpetrator, witness,
or victim, have an interest in not sharing this informa-
tion with the public. Further, releasing the identity and
other personal information of the parties could make
them potential targets for retaliation.[39] Therefore, we
observe that, as a hypothetical matter, the portion of
the incident report containing the names, addresses, or
other identifying information of the victims, witnesses,
and suspects may constitute information of a personal
nature. We note, however, that the passage of time and
the course of events may have rendered some, if not all,
of this information matters of public knowledge and
therefore not of a personal nature.

Other information in the police incident report, how-
ever, such as the narrative statements and information
relating to physical evidence, to the extent that it does
not identify any of the private parties involved, may not

---

[38] See *Larry S Baker, supra* at 95 (holding that disclosure of accident
reports merely for the identification of potentially injured individuals is
an unwarranted invasion of privacy).

[39] See *Mager, supra* at 143 (noting that disclosure of the names of gun
owners might make them targets of theft).

be personal in nature. Therefore, this information may not be exempt under the privacy exemption.

### (5) "CLEARLY UNWARRANTED" INVASIONS

But this does not end the inquiry. With regard to information that is of a personal nature, such information is exempt only if disclosure would constitute a " 'clearly unwarranted invasion of privacy.' "[40] As stated above, the second prong of the privacy exemption requires the court to balance the public interest in disclosure against the interest the exemption is intended to protect.[41] State News argues that the police incident report would shed light on issues of public concern, such as MSU's security policies and the government's response to criminal activity. MSU responds that, while the police incident report might shed some light on the workings of government, its disclosure would not satisfy the requirement of *Mager* that disclosure contribute "significantly" to the public's understanding of government operations.

As stated in *Mager*, the purpose of FOIA " 'is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.' "[42] Unlike the public body in *Mager*, however, MSU has not demonstrated that the release of the police incident report would shed no light on its conduct as a public body. For example, the police incident report might shed light on campus security practices with regard to nonstudents or on the thorough-

---

[40] See *Bradley, supra* at 295 (citation omitted).

[41] *Mager, supra* at 144-145.

[42] *Id.* at 145, quoting *Reporters Comm for Freedom of the Press, supra* at 773.

ness of the police investigation.[43] And the release of the police incident report might contribute "significantly" to public understanding of how the government operates, not merely shed some light on it.[44]

The police incident report is not part of the record before us. Without reading it, we cannot measure the degree to which the public interest might be served by disclosure. Further, although disclosure of personal information about the parties involved, such as their names, addresses, and dates of birth (if this information is not already in the public domain), might not add to the public's understanding of the workings of government, any exempt information can be separated so that the nonexempt portions of the report can be released. As discussed in more detail below, FOIA requires such separation.[45]

### D. IN CAMERA REVIEW

In *Evening News*, the Michigan Supreme Court set forth a three-step procedure for trial courts reviewing the denial of a FOIA request: (1) receive a complete particularized justification, or (2) conduct an in camera hearing with review de novo to determine whether there is particularized justification for the exemption, or (3) allow the plaintiff's counsel in camera access to the contested documents.[46] Explaining this procedure, the Supreme Court said:

> The objective, of course, is to secure disclosure of all pertinent information that is not exempt. If the government and the court are mutually aware of the six rules [set

---

[43] See *Detroit Free Press, Inc v Dep't of Consumer & Industry Services*, 246 Mich App 311, 320; 631 NW2d 769 (2001).

[44] *Mager, supra* at 145.

[45] MCL 15.244; *Herald Co, Inc v Eastern Michigan Univ Bd of Regents, supra* at 482.

[46] *Evening News, supra* at 516.

forth at 417 Mich 503 and quoted earlier in this opinion] and the government is prepared to act accordingly, the matter should normally be resolved under the first step. Where the government for whatever reason is reluctant or antagonistic, or the court is in doubt, the trial court may have to proceed to the second step. If the matter is relatively clear and not too complex, the court, or the court with a master, may, within acceptable expenditure of judicial energy, be able to resolve the matter *in camera*. However, if the matter is not clear or simple, the court may have to consider employment of plaintiff's counsel under special agreement in order to resolve the matter.[47]

By using the word "or," the Supreme Court did not *require* a trial court to conduct an in camera review when considering the law-enforcement-purpose exemption. However, the *Evening News* Court did state that if the government is "reluctant or antagonistic, or the court is in doubt," it may be necessary to review the requested information in camera.[48] Here, given its position at the trial level and on appeal, MSU is most certainly "reluctant or antagonistic."

A public body is required to separate exempt and nonexempt material to the extent practicable and make the nonexempt material available to the requesting party.[49] At least some of the information in the police incident report may be nonexempt. For example, the report contains booking photographs, and this Court has held that the disclosure of booking photographs does not constitute an unwarranted invasion of privacy.[50] It is of pivotal importance here that the trial

[47] *Id.*

[48] *Id.*

[49] MCL 15.244; *Herald Co, Inc v Eastern Michigan Bd of Regents, supra* at 482.

[50] *Detroit Free Press, Inc v Oakland Co Sheriff,* 164 Mich App 656, 657, 669; 418 NW2d 124 (1987).

court refused to review the police incident report in camera. Absent such a review, it is self-evident that the trial court could not, for example, have engaged in the necessary balancing analysis under the "clearly unwarranted" invasion of privacy prong of the privacy exemption to weigh the public interest in disclosure against the interest the exemption is intended to protect. Under these circumstances, the trial court abused its discretion. Accordingly, we conclude that the matter should be remanded to the trial court with instructions to review the police incident report and, to the extent practicable, separate the exempt information (if any currently exists) and the nonexempt information and make the nonexempt information available to State News.

## VI. CONCLUSION

In sum, we conclude that:

(1) The trial court erred in its determination that the entire police incident report was exempt from disclosure under the privacy exemption.

(2) Because the application of the privacy exemption involves a balancing test, the trial court abused its discretion when it failed to review the police incident report in camera.

(3) Although the trial court may have been correct that portions of the police incident report could be withheld on the basis of the law-enforcement-purpose exemption, this exemption may no longer apply to the entire report, or even to any portion of it, depending on the current status of the investigation and criminal trials.

(4) On remand, the trial court shall consider, in the process of its in camera review and its subsequent

decision, that the justification for applying the law-enforcement-purpose exemption must be more than conclusory; instead, a justification must "indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings."[51]

(5) On remand, the trial court shall consider, in the process of its in camera review and its subsequent decision, whether any information withheld should now be made available in light of the passage of time and the current status of the investigation.[52]

(6) On remand, the trial court shall consider, in the process of its in camera review and its subsequent decision, whether some of the identifying information in the police incident report can be redacted to protect the privacy interests of the involved parties, if necessary.[53]

We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[51] *Evening News, supra* at 503.

[52] See *Herald Co, Inc v City of Kalamazoo, supra* at 387.

[53] See, e.g., *Detroit Free Press, Inc v Dep't of Consumer & Industry Services, supra* at 321.