*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STATE APPELLATE DEFENDER OFFICE,

Plaintiff-Appellant,

v

CITY OF GRAND RAPIDS,

Defendant-Appellee.

UNPUBLISHED
December 09, 2025
11:17 AM

No. 373357
Kent Circuit Court
LC No. 24-003373-CZ

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Plaintiff, the State Appellate Defender Office (SADO), appeals by right from the trial court's order granting partial summary disposition to defendant, the City of Grand Rapids, pursuant to MCR 2.116(C)(8). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

SADO, as part of its operations representing indigent persons in appellate proceedings, submitted a FOIA request to the City for "all incident reports, memos, and logs" from 2006 until May 30, 2008, relating to a police response to a particular address. SADO was looking for evidence that it hoped would exculpate one of its clients whom had been convicted of murder. In response to the request, the City produced 23 police reports in response, but redacted from each report the identifying information (such as the names, addresses, phone numbers, dates of birth, and other personal information) of any people whom the police officers had interacted with during each incident. As relevant to the issues raised on appeal, the City advised that it had redacted information pursuant to the privacy exemptions set forth in MCL 15.243(1)(a) and (b)(*iii*).

SADO commenced this FOIA action in response. The complaint alleged that the City's redactions violated FOIA and asked the court to order the release of the unredacted reports containing the witnesses' identities. The City moved for summary disposition pursuant to MCR 2.116(C)(8), arguing that its redactions were proper under MCL 15.243(1)(a).

Following a hearing on the motion, the trial court identified 10 police reports that involved gunshots and one stolen vehicle. The court ruled that the privacy exemption applied to the

witnesses' identifying information in these 10 police reports. Accordingly, it granted the City's motion for summary disposition with respect to the 10 police reports the court had identified. The court withheld its decision on the other 13 police reports pending a status conference. However, the parties stipulated to the dismissal of the complaint with respect to the remaining police reports so that SADO could appeal the court's summary-disposition decision.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

SADO argues that the trial court erred by granting the City summary disposition. We review de novo the trial court's decision to grant a motion for summary disposition. *Rataj v City of Romulus*, 306 Mich App 735, 746; 858 NW2d 116 (2014). "A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. The motion must be granted if no factual development could justify the plaintiff's claim for relief." *Id*. at 746-747 (quotation marks and citations omitted). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). We also review de novo questions of law regarding the interpretation and application of FOIA. *Rataj*, 306 Mich App at 747. "In general, whether a public record is exempt from disclosure under FOIA is a mixed question of fact and law. However, when the facts are undisputed and reasonable minds could not differ, whether a public record is exempt under FOIA is a pure question of law for the court." *Id*. at 747-748 (citation omitted).

## B. ANALYSIS

"FOIA is a manifestation of this state's public policy favoring public access to government information, recognizing the need that citizens be informed as they participate in democratic governance, and the need that public officials be held accountable for the manner in which they perform their duties." *Id*. (quotation marks and citation omitted); see also MCL 15.231(2). "Under FOIA, a public body must disclose all public records that are not specifically exempt under the act." *Rataj*, 306 Mich App at 749. Indeed, FOIA is a prodisclosure statute. *Rataj*, 306 Mich App at 747. As such, FOIA's disclosure provisions must be broadly interpreted whereas its exemptions must be narrowly construed. *Id*. at 748-749. The burden on proving an exemption is on the party asserting the exemption. *Id*. at 749.

Here, the City contends that the redacted information was exempt from disclosure under FOIA's privacy exemption, MCL 15.243. That exemption allows a public body to exempt from disclosure "[i]nformation of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." As explained in *ESPN, Inc v Mich State Univ*, 311 Mich App 662, 664-665; 876 NW2d 593 (2015):

> "The test for applicability of the exemption has two prongs, which both must be satisfied in order for the exemption to apply: First, the information must be 'of a personal nature.' Second, it must be the case that the public disclosure of that information 'would constitute a clearly unwarranted invasion of an individual's privacy.' " [Citations omitted.]

"Information not of a personal nature is subject to disclosure without considering the second prong of the privacy exemption." *Detroit Free Press v City of Warren*, 250 Mich App 164, 167-168; 645 NW2d 71 (2002).

SADO argues that the redacted information was not of a personal nature. We disagree.

Information is "of a personal nature" when the information relating to a person is private or confidential, or when it contains intimate or embarrassing details about that person. *Id*. at 665. "Home addresses, dates of birth, and telephone numbers typically constitute information of a personal nature within the meaning of the privacy exemption." *Rataj*, 306 Mich App at 754. In *Rataj*, this Court stated that "the names of the citizen and officer involved in the assault" within a police report were not information of a personal nature "[i]n the absence of special circumstances that are not present here . . . ." *Id*. at 753. However, as explained in *ESPN*:

> It is accurate to state that a person's name does not by itself provide information of a personal nature; but this is true only to the extent that the name is not associated with any personal information about the person named. In order for a name to be useful, the name must normally be associated with some other information. In the context of a police report, a person's name is useful because the report will contain information about the person's actual or purported involvement in the incident. That is, the report will associate the name with specific facts or allegations that may or may not be information of a personal nature. And, in analyzing the first prong of the test for the privacy exemption, our Supreme Court has recognized that the relevant inquiry is whether the information associated with the name is information of a personal nature. [*ESPN*, 311 Mich App at 666.]

On appeal, SADO notes that the above analysis is nonbinding dicta because *ESPN* was resolved on the second prong of the privacy exemption, not the first. Specifically, the *ESPN* Court stated that "it is unnecessary to examine individually each report to ascertain whether the report includes information of a personal nature about the student—athletes who were identified as suspects." *Id*. at 668. "However, an issue that is intentionally addressed and decided is not dictum if the issue is germane to the controversy in the case even if the issue was not necessarily decisive of the controversy in the case." *Griswold Properties, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007). We hold that the *ESPN*'s Court intentional and detailed discussion of the first-prong of the privacy exemption is not dicta because it was germane to the controversy in the case, even if it was not ultimately decisive. And, even if the *ESPN* Court's rationale would properly be classified as dicta, we find it to be persuasive and adopt it as our own.

Additionally, we find instructive the United States Court of Appeals for the Sixth Circuit's decision in *Cincinnati Enquirer v Dep't of Justice*, 45 F4th 929 (CA 6, 2022), which recognized "that people who were investigated for suspected criminal activity or who were otherwise mentioned therein could be subjected to embarrassment, harassment, and even physical danger." *Cincinnati Enquirer v Dep't of Justice*, 45 F4th 929, 933 (CA 6, 2022). Indeed, it has been recognized that "[i]t is surely beyond dispute that the mention of an individual's name in a law

enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v CIA*, 286 US App DC 13, 25; 911 F2d 755 (1990).[1]

Here, considering that the witness names were associated with major crimes—shootings and vehicular theft—we agree that the association of their names with the criminal activity is information containing embarrassing details about that person. *ESPN*, 311 Mich App at 665.

SADO next contends that the identifying information of witnesses in the police reports are not of a personal nature because it is not seeking the names of witnesses to learn about the witnesses' personal information such as whether the witnesses owned guns or their preferred political party. This argument is without merit because it does not matter what purpose SADO had for requesting information under FOIA; what matters is what information in the police reports is associated with the witnesses' identifying information. See *Rataj*, 306 Mich App at 752. SADO further argues that the witnesses' information is not of a personal nature because there is a low risk that the police reports would fall into the wrong hands, thereby reducing any potential risk to the witnesses' safety. SADO asserts, essentially, that plaintiff can be trusted with the witnesses' information because it is an entity created by statute with the sole goal of representing indigent persons.

These arguments are also without merit. It is well established that:

> In determining whether to withhold information under the privacy exemption, a state agency should not consider the requester's identity or evaluate the purpose for which the information will be used. The exemption conspicuously lacks a requirement that such factors be considered. Of course, the requester's identity must be given to allow the agency to respond to the request. The act does not require the requester to reveal why it needs or wants the information, however. *State Employees Ass'n v Mich Dep't of Mgt & Budget*, 428 Mich 104, 121; 404 NW2d 606 (1987).

Additionally, "[c]ase law is clear that initial as well as future uses of information requested under the FOIA are irrelevant in determining whether the information falls within [an] exemption, as is the identity of the person seeking the information." *Taylor v Lansing Bd of Water & Light*, 272 Mich App 200, 205; 725 NW2d 84 (2006). Finally, whether a denial of a FOIA request was wrongful is determined according to the information that the public body knew at the time the public body denied the request. *State News v Mich State Univ*, 481 Mich 692, 703-704; 753 NW2d 20 (2008) (*State News II*). Accordingly, SADO's status, what use it has for the information, its actions, or possible protective orders by the court are not relevant to whether the City's redaction of the witnesses' information was proper under the privacy exemption.

---

[1] "[T]he privacy exemption in the federal FOIA is worded differently than the corresponding state provision. For that reason, federal decisions concerning the privacy exemption are of limited applicability in Michigan. Nonetheless, federal law is generally instructive in FOIA cases." *Mager v Dep't of State Police*, 460 Mich 134, 144; 595 NW2d 142 (1999).

SADO next contends that the trial court erroneously concluded that disclosure of the witnesses' information would necessarily jeopardize the witnesses' safety. Contrary to SADO's characterization, the trial court did not find that the witnesses in this case would face physical danger. Rather, the court recognized that disclosure of the identities of witnesses to crimes carries an inherent risk of harm if the information gets into the wrong hands, which our Supreme Court has also recognized, particularly when the crimes involved are violent as in this case. See *Mich Federation of Teachers*, 481 Mich at 677 (noting the "realistic concern" that identifying information falling into the wrong hands could jeopardize the safety of a person or that person's family).

For the foregoing reasons, we conclude that the trial court did not err by finding that the identifying information of witnesses in the police reports in this case constituted information of a personal nature because the police reports associate the witnesses with criminal incidents.

We turn now to the second prong of the privacy exemption. Whether disclosure of information of a personal nature constitutes a clearly unwarranted invasion of an individual's privacy depends upon the balance between the privacy interest of the individual and the public interest. *ESPN, Inc*, 311 Mich App at 668-669. "The only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of *the operations or activities of the government*." *Id*. at 669 (quotation marks, citation, and alteration omitted). "Requests for information on private citizens accumulated in government files that reveal little to nothing about the inner working of government will fail this balancing test." *Id*.

A review of the police reports shows that the City redacted only the identifying information of witnesses but left untouched the names and narratives of the officers as well as the general physical description of the witnesses such as their race, general age, and sex. Thus, the question is whether disclosure of the witnesses' identifying information would serve the "core purpose" of FOIA by contributing significantly to the public's understanding of the operations or activities of defendant. *ESPN, Inc*, 311 Mich App at 669.

SADO argues that disclosure in this case would serve this interest because its mission to represent indigent persons in appeals promotes government accountability. SADO states:

> Who the police chose to interview and where will shed light on their inner workings and lead to SADO's and the public's ability to further understand, investigate and draw conclusions as to any potential motives, biases, errors, and other highly relevant factors associated with the [Grand Rapids Police Department]'s handling of the investigation that led to Mr. Brown's arrest and ultimate conviction, which could result in the same to others.

But SADO's argument misses the mark. The question is whether the public's understanding of the City's operations and activities would be significantly benefited if the public became aware of the names of the identities of the witnesses. It is clear that the public would see no such benefit in this case. The police reports already provide the full narrative account of each incident as well as the race, age, and sex of the people involved.

-5-

SADO directs this Court to *ESPN*'s analysis of the second prong. *ESPN*, 311 Mich App at 668-669. In that case, ESPN submitted a FOIA request that identified 301 student athletes by name and sought all incident reports related to those students over a specific period; Michigan State University redacted the names of all suspects in the reports, even if they were one of the student athletes named in the request. *Id.* at 663. The *ESPN* Court held that the names should be disclosed, reasoning:

> ESPN seeks the information to learn whether policing standards are consistent and uniform at a public institution of higher learning. The disclosure of the names is necessary to this purpose. In order to determine whether the student-athletes were treated differently from the general student population or from each other on the basis of the student-athlete's participation in a particular sport or the renown of the student-athlete, it is necessary to know the student-athlete's name and the nature of the allegations involved in the investigation. Only then can ESPN compare and contrast the information within the requested reports to both other incident reports and other cases disclosed via news media. [*Id.* at 669-670.]

However, this case is distinguishable from *ESPN* because nothing in the record suggests that SADO was applying its policing standards inconsistently with regard to the witnesses mentioned in the police reports in this case.

Unlike the student athletes in *ESPN*, the identities of the witnesses in this case have no discernable relationship with how they were treated by defendant or defendant's investigative practices. One would gain no greater understanding of how defendant conducts its police operations by looking at the fully unredacted police reports in this case as compared to the police reports that defendant produced. The identifying information in this case is simply "information on private citizens accumulated in government files that reveal little to nothing about the inner working of government . . . ." *Id.* at 669.

Accordingly, the trial court correctly determined that disclosure of the witnesses' identities would constitute a clearly unwarranted invasion of the witnesses' privacy.

SADO next argues that the City did not justify its redactions with sufficient specificity, and, therefore, the redactions violated FOIA. We disagree. The City's letter in response to SADO's FOIA request stated:

> It is the City's position that the public interest in the disclosure of this information is outweighed by the public interest in keeping this information private.
>
> * * *
>
> In this instance, release of the requested records does not reveal the inner workings of government and therefore does not serve the core purpose of the FOIA. Therefore, portions of the report (names, addresses, phone numbers, dates of birth, etc.) that fall within the above-mentioned statute have been redacted, and that requested information which is withheld is considered denied. [Complaint, 136.]

The City was obligated to provide a justification for its redactions that was more than a conclusory repetition of statutory language and that indicated, factually, the basis for its redactions. *State News v Mich State Univ*, 274 Mich App 558, 570; 735 NW2d 649 (2007) (*State News I*), rev'd in part on other grounds 481 Mich 692 (2008). We conclude that the explanation in its letter meets these requirements.

Similarly, SADO argues that the trial court erred by not reviewing the unredacted police reports *in camera* and then making particular findings regarding whether the privacy exemption applied to each report. SADO cites *State News I*, 274 Mich App 558, in support of this argument. However, *State News* is distinguishable from this case because, in *State News I*, 274 Mich App at 562-563, the trial court ruled that the privacy exemption applied to a police report that was not produced at all. This Court held that the trial court erred by failing to consider the police reports *in camera* to determine what information within the report was exempt and what was not exempt. *Id*. at 581-582. The trial court in this case was not required to conduct an *in camera* review because the City had produced police reports that contained the police officers' narratives and other details. The trial court was capable of determining whether the privacy exemption applied to the redactions in this case simply by looking at the police reports that SADO attached as exhibits to its complaint.

We also find unavailing SADO's argument that the trial court was required to make particularized findings regarding each redaction. It is sufficient for the court to make "[b]rief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." MCR 2.517(A)(2).

SADO argues that the trial court erred by improperly interpreting the preamble of FOIA in a novel fashion. However, because the court did not rely upon that novel interpretation to support its decision, we decline to consider whether it was or was not a proper interpretation.

Finally, SADO argues that the trial court erred by not giving it an opportunity to amend its pleadings before it granted summary disposition under MCR 2.116(C)(8). "If a court grants summary disposition pursuant to MCR 2.116(C)(8) . . . the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647, 657 (1997), citing MCR 2.116(I)(5). Here, SADO suggests that it could amend its complaint to more specifically plead reasons why its disclosure of the redacted information would serve FOIA's "core purpose." In its complaint, SADO indicated that the primary purpose for obtaining the information was to obtain post-conviction relief for one of its clients. However, considering that the analysis of the privacy exemption in this case turned on FOIA's core purpose, not on the purpose advanced by SADO in its complaint, any amendment of that nature would be futile.

Affirmed. No taxable costs are awarded. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney